959 A.2d 1233 (2008)
403 N.J. Super. 620
STATE of New Jersey, Plaintiff,
v.
Arthur WOODRUFF, Defendant.
No. 18177, APPEAL NO. 1-2008
Superior Court of New Jersey, Law Division, Criminal Part, Mercer County.
Decided June 25, 2008.
*1235 Laura Kotarba, Assistant Prosecutor, for plaintiff (Joseph L. Bocchini, Jr., Mercer County Prosecutor).
David P. Schroth, Trenton, for defendant.
OSTRER, J.S.C.
This interlocutory appeal from the municipal court requires this court to construe the motor vehicle code provision that commands drivers to maintain a lane "as nearly as practicable" and to change lanes safely. N.J.S.A. 39:4-88(b). The municipal court denied defendant's motion to suppress the fruits of an investigatory traffic stop that the officer conducted after determining that the driver had failed to maintain a lane. No New Jersey court has construed the provision in a published decision, although it has been a part of New Jersey's rules of the road since 1931. L. 1931, c. 247, § 9. In sustaining the stop, this court will rely upon the statute's plain meaning, and persuasive authority from other jurisdictions.
After a de novo review of a largely stipulated record below, this court finds the following facts by a preponderance of the evidence. A few minutes after midnight on May 25, 2007, East Windsor Township Police Officer Stephen Aquaviva observed Arthur Woodruff driving his small Toyota pickup truck south on Route 130 toward Hankins Road. Woodruff was in the right-hand lane. It is undisputed that Woodruff twice veered out of his lane, crossing over the fog line, which separates the right lane's edge and the shoulder. The officer's report did not say how far Woodruff entered the shoulder, but this court, like the municipal court, credits the officer's unchallenged testimony at the suppression hearing that each time, the truck was half in lane, and half on the shoulder.[1] As stated in his report, the officer then "activated the overhead lights to the marked police vehicle to conduct a motor vehicle stop [for a] violation of [N.J.S.A.] 39:4-88B (failure to maintain *1236 lane)." Aquaviva ultimately issued summonses for failing to maintain lane, careless driving, reckless driving, refusal to submit to a test to determine if the driver was driving under the influence, and driving under the influence.
Defendant challenges the stop and subsequent investigation solely upon the basis that (1) defendant's repeated deviation from his lane did not amount to a violation of the failure-to-maintain-lane law; and (2) the stop was not justified by the community caretaking exception to the warrant requirement. This court has separately addressed the community caretaking exception. See State v. Washington, 296 N.J.Super. 569, 687 A.2d 343 (App. Div.1997) (investigatory traffic stop justified based on community caretaking exception when driver was weaving within his lane of travel and was driving 36 m.p.h. in 45 m.p.h. zone). The court writes to address the failure-to-maintain-lane law.
It is well settled that a police officer may, without a warrant, conduct an investigatory traffic stop based on a reasonable and articulable suspicion that the defendant engaged in a traffic offense. "[A] stop founded on a suspected motor vehicle violation essentially is governed by the same case law used to evaluate a stop based on suspected criminal or quasi-criminal activity." State v. Golotta, 178 N.J. 205, 213, 837 A.2d 359 (2003).
The "articulable reasons" or "particularized suspicion" ... must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced. Such observations are those that, in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from those facts, reasonabl[y] warrant the limited intrusion upon the individual's freedom.
[State v. Davis, 104 N.J. 490, 504, 517 A.2d 859 (1986).]
Reasonable suspicion is a "lower standard than the probable cause necessary to sustain an arrest." State v. Golotta, supra, 178 N.J. at 213, 837 A.2d 359. Reasonable articulable suspicion does not require that the officer prove that the defendant actually committed a motor vehicle violation; he need only prove that he had a reasonable and articulable suspicion of a violation. State v. Jones, 326 N.J.Super. 234, 239, 741 A.2d 104 (App. Div.1999).
Thus, the stop in this case may be grounded in a reasonable and articulable suspicion that the driver violated the law requiring drivers to maintain their lane and change lanes safely. Consequently, the court must construe N.J.S.A. 39:4-88(b) ("Section 88(b)"), which states: "[A] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety."
No binding New Jersey case law has interpreted section 88(b). Defendant argues first that a driver does not violate the law unless his movement is proved to be unsafe to other drivers. Second, he argues that two deviations from a lane, even if by half-a-car-width, are insufficient to constitute a violation. Based on the plain language of the statute and persuasive authority from other states, the court rejects both arguments, and will address them in turn.
Based on the plain language, the safety element applies only to changing lanes, not maintaining lanes. Section 88(b) imposes two requirements. First, a driver must, as nearly as practicable, drive within his single lane, in other words, maintain his lane. Second, a driver may not change lanes until he can do so safely. The first clause of section 88(b) proscribes *1237 deviation from a lane. Thus, it covers situations where the driver has no intention to change lanes, or where the driver does not or cannot change lanes. For example, a driver can violate the first clause when deviating from the lane of a single-lane, one-way road, or on a single-lane ramp to or from a highway, or when driving in a three-lane highway, in which two lanes are traveling against the driver. In those cases, no lane-change is possible, but the driver's failure to maintain a lane is proscribed.
The second clause of section 88(b) pertains to movements from a lane. It requires drivers to change lanes safely. For example, a sudden, unexpected lane change may be unsafe on a crowded roadway, and inconsequential on a deserted one. When the Legislature has intended to condition a violation on the driver's impact on other motorists, it has said so. See, e.g., N.J.S.A. 39:4-126 (making it a violation for a driver to change lanes without signaling if it might affect other motorists). On the other hand, like the first clause of section 88(b), the Motor Vehicle Code elsewhere requires accurate driving, as nearly as practicable, without requiring separate proof of a safety impact. See, e.g., N.J.S.A. 39:4-82 (requiring driving "as closely as possible to the right-hand edge or curb of the roadway, unless it is impracticable to travel on that side of the roadway"); N.J.S.A. 39:4-123 (driver intending to turn right must approach in the far right lane and make the right turn "as close as practicable to the right hand curb or edge of the roadway").
Persuasive authority from other states supports this court's interpretation of the statute. New Jersey's provision, like that of most states, is based on the Uniform Vehicle Code. See Unif. Vehicle Code § 11-309(a), reprinted in Traffic Laws Annotated, National Committee on Uniform Traffic Laws and Ordinances, U.S. Dep't of Transp. (1979). Construing a comparable provision, the Illinois Supreme Court held that the statute creates two separate requirements for lane usage: first, the motorist must drive as nearly as practicable within one lane, and second, a motorist may not move from one lane to another until he can do so safely. People v. Smith, 172 Ill.2d 289, 216 Ill.Dec. 658, 665 N.E.2d 1215, 1218-19 (1996). Federal and state courts in Kansas have reached the same conclusion. United States v. Jones, 501 F.Supp.2d 1284, 1298 (D.Kan.2007); State v. Marx, 38 Kan.App.2d 598, 171 P.3d 276, 282-83 (2007) (expressly rejecting State v. Ross, infra), reh'g. granted (Kan. April 23, 2008).
This court finds unpersuasive contrary authority that unless wandering over a lane affected other vehicles' safety, no violation has occurred. See State v. Ross, 37 Kan.App.2d 126, 149 P.3d 876 (finding that a violation of failure to maintain a lane is a violation only if the driver's actions were unsafe), rev. denied, (Kan. June 21, 2007); Rowe v. Maryland, 363 Md. 424, 769 A.2d 879, 884-85 (2001) (same); Commonwealth v. Gleason, 567 Pa. 111, 785 A.2d 983 (2001) (repeated crossing of fog line did not constitute violation because it did not create safety hazard); Hernandez v. Texas, 983 S.W.2d 867, 870-71 (Tex.App. 1998) (stating that violation occurs "only when a vehicle fails to stay within its lane and such movement is not safe or is not made safely").
In sum, this court concludes that the State need not prove that Woodruff's extreme deviation from the right lane affected the safety of other drivers. Woodruff was not attempting to change lanes. He was driving in a single lane, but was unable to remain within that lane.[2]
*1238 The court also rejects defendant's argument that, in any event, two departures from a lane do not suffice to establish a violation. The defense argued that conceivably, when a driver twice deviates from a lane, it "can be for an innocuous, harmless reason such as reaching for a tissue...." However, the number of lane departures is just one factor in determining whether a driver has adhered to a single lane as nearly as practicable.
The statute plainly does not make it a violation anytime a driver strays from a lane. If it is not practicable to maintain the lane, then a departure from lane is not a violation. The issue is, what is meant by the clause, "as nearly as practicable?" Considering the plain language of the statute, and the persuasive authority of other courts, this court finds that a driver must maintain a lane to the extent that a person may reasonably maintain the lane, given surrounding circumstances, such as road conditions, weather, vehicle condition, and vehicle size and lane width, and taking into account the skill that a reasonable driver, as opposed to a perfect driver, should have.
On its face, the "as nearly as practicable" language apparently would excuse a departure from the lane caused by obstacles, road conditions, or perhaps the relative width of the vehicle in comparison to the lane. See, e.g., United States v. Gregory, 79 F.3d 973, 978 (10th Cir.1996) (disapproving traffic stop of truck that "briefly crossed into the right shoulder emergency lane" when driving on winding, mountainous road in windy conditions, finding that "any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway"). But, if physical conditions do not justify wandering from the lane, a repeated departure from a lane may constitute a violation. United States v. Ozbirn, 189 F.3d 1194, 1198 (10th Cir. 1999) (holding traffic stop was reasonable where no "adverse physical conditions existed" and driver of motor home passed over onto shoulder "twice within a quarter mile"). In State v. Marx, supra, 171 P.3d at 283, the court stated that the "`nearly as practicable' language allows a driver to momentarily move outside a lane of traffic due to special circumstances such as weather conditions or an obstacle in the road," but the court found a reasonable and articulable basis to stop a motor home that crossed the fog line, overcorrected, and then crossed the center line.
This court finds persuasive the Tenth Circuit's general rule that the lane maintenance statute requires "a fact-specific inquiry into the particular circumstances present during the incident in question in order to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway." United States v. Alvarado, 430 F.3d 1305, 1309 (10th Cir.2005) (holding that single departure may constitute violation). But see Rowe v. Maryland, supra, 769 A.2d at 887 (construing statute to require "more... than a momentary crossing or touching of an edge or lane line").
Based on such a fact-sensitive analysis, one or two deviations from a lane may or may not constitute a violation, depending on the circumstances. While it might not *1239 be reasonable to expect a driver to avoid even the slightest deviation from a lane over an extended distance, it may be reasonable to expect drivers to avoid a sudden, significant deviation from the lane or a sudden, over-compensating return back, absent physical obstacles, mechanical difficulty, or other uncontrollable circumstances. Moreover, even if it may be unreasonable to expect a driver on an empty road to avoid any slight deviation from a lane over an extended distance, it would be reasonable to expect drivers to avoid repeatedly deviating from the lane, although slightly, over a short distance. Also, a driver who suddenly deviates from the lane and then overcompensates because he is adjusting his stereo, or reaching for food, or turning around to silence rowdy children, would not be maintaining lane as nearly as practicable. In this court's view, a driver reasonably should not let such diversions or distractions cause him to lose control of his vehicle.
Applying these principles, the court finds that the officer had a reasonable and articulable suspicion of a violation of the failure-to-maintain-lane law. As noted above, in order to justify a stop, the State need not prove beyond a reasonable doubt that the defendant violated the statute. It need only prove a reasonable and articulable suspicion of a violation. State v. Jones, supra, 326 N.J.Super. at 239, 741 A.2d 104. Given the extreme deviation of lane, half Woodruff's truck entered the shoulder, and the repeated nature of the deviation, the officer at least had a reasonable and articulable suspicion of a violation. He was therefore justified in stopping Woodruff to determine if he drove to the right because of road obstacles, vehicle failure, or other reasons that made it impracticable for him to drive in the single lane. In so doing, if the officer uncovered evidence that gave rise to a reasonable and articulable suspicion of a separate offense, driving under the influence, he would have been entitled to pursue an investigation of that possible offense as well. See State v. Dickey, 152 N.J. 468, 479-80, 706 A.2d 180 (1998) (stating that circumstances or findings upon initial investigatory stop may give rise to suspicions that warrant broadened inquiry).
In sum, the officer had a reasonable and articulable suspicion of failure to maintain lane under N.J.S.A. 39:4-88. Therefore, the motion to suppress is denied. The case is remanded to municipal court for trial.
NOTES
[1] This court gives "due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses." State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964).
[2] This court does not intend to imply that it was safe for Woodruff twice to drive three feet into the shoulder, simply because other motorists were not present. First, Aquaviva was present. Cf. State v. Moss, 277 N.J.Super. 545, 547, 649 A.2d 1349 (App.Div.1994) (finding violation of statute prohibiting failure to signal if other traffic "may be affected," where police vehicle was immediately behind defendant's vehicle). Second, after repeatedly entering the shoulder, it was reasonable for the officer to fear that Woodruff might drive off the roadway, or collide with roadside obstructions like signs or posts, especially if the shoulder narrowed or his failure to maintain lane worsened.