32 A.3d 1109

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
REYNOLD REGIS, DEFENDANT–RESPONDENT.

Argued September 26, 2011—Decided December 14, 2011.

440

*Lucille M. Rosano,* Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (*Carolyn A. Murray,* Acting Essex County Prosecutor, attorney).

*Carmine D. Campanile* argued the cause for respondent.

Justice PATTERSON delivered the opinion of the Court.

The Court considers *N.J.S.A.* 39:4–88(b), which provides that on a roadway "divided into clearly marked lanes for traffic," a motor vehicle "shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety." *N.J.S.A.* 39:4–88(b). The issue in this case is whether the first and second clauses of *N.J.S.A.* 39:4–88(b) identify two separate, independent offenses or combine to describe a single offense.

Defendant Reynold Regis was charged with a violation of *N.J.S.A.* 39:4–88(b) after his car was observed swerving over the

fog line of a state highway.[1] After he was convicted of that violation in municipal court, defendant contended in the Law Division and on appeal that a driver's conduct does not constitute an offense under *N.J.S.A.* 39:4–88(b) unless he has failed to maintain a single lane of travel and has shifted from one lane to another without first ascertaining the safety of that maneuver. Defendant contended that his repeated crossing over the fog line posed no danger to other vehicles, and therefore he could not be convicted of violating *N.J.S.A.* 39:4–88(b).

The Law Division rejected defendant's argument, construing *N.J.S.A.* 39:4–88(b) to identify two independent offenses, the first of which was committed by defendant because he failed to maintain a single lane of travel. Defendant was convicted of violating the statute. The Appellate Division reversed defendant's conviction in an unpublished opinion. It held that the two clauses of *N.J.S.A.* 39:4–88(b) described only one offense, and that because there was no evidence that defendant had changed lanes without ascertaining the safety of the lane change, defendant had not violated *N.J.S.A.* 39:4–88(b).

We granted certification, 205 *N.J.* 102, 13 *A.*3d 365 (2011), and now reverse. We conclude that *N.J.S.A.* 39:4–88(b) describes two separate and independent offenses, one for a driver's failure to maintain a lane to the extent practicable and the other for changing lanes without ascertaining the safety of the lane change, and that defendant was properly convicted of the former offense.

I.

During the early evening of August 4, 2008, State Trooper Dennis I. Cappello observed defendant's vehicle repeatedly swerve over the fog line and onto the shoulder of Route 280 near Roseland, New Jersey. Trooper Cappello noted no objects in the roadway or other road conditions that might have prompted

---

[1] The fog line "separates the right lane's edge and the shoulder." *State v. Woodruff*, 403 *N.J.Super.* 620, 623, 959 *A.*2d 1233 (Law Div.2008).

defendant to swerve from the road into the shoulder. He signaled to defendant to stop, and upon approaching the car, detected the odor of burnt marijuana. Trooper Cappello asked defendant to step out of the car, and observed defendant "swaying" and "using his arms for balance." Trooper Cappello inquired about the odor, and defendant responded that he had been smoking a cigarette, but that it was possible that a passenger, his girlfriend Camilla Reynolds, had been smoking marijuana. The trooper administered two field sobriety tests to defendant, both of which defendant failed. Trooper Cappello arrested defendant for driving under the influence in violation of *N.J.S.A.* 39:4–50. Although no controlled dangerous substances were found on defendant's person or that of his passenger, a search of the vehicle revealed a small bag of marijuana. Defendant and Ms. Reynolds were arrested, and in response to the officer's questions, both denied that they owned the bag of marijuana.

Defendant was charged with driving under the influence of a controlled dangerous substance (CDS), *N.J.S.A.* 39:4–50, possession of CDS, *N.J.S.A.* 2C:35–10(a)(4), and failure to maintain a lane, *N.J.S.A.* 39:4–88(b). The Roseland Municipal Court heard the testimony of the State's witnesses—the state trooper who made the arrest, an expert witness regarding the results of defendant's urine test for the presence of marijuana metabolites, and an expert witness who conducted a forensic analysis on the bag of marijuana—and of defendant's sole witness, Ms. Reynolds, who testified that the marijuana in the car was hers. The municipal court found defendant not guilty of possession of CDS but guilty of driving under the influence and of failure to maintain a lane.

Defendant appealed his conviction to the Law Division, which conducted a *de novo* review of the facts. Construing *N.J.S.A.* 39:4–88(b) to incorporate two independent offenses, the Law Division concluded that the State had proven the elements of the first offense identified in the statute, namely failure to drive "as nearly as practicable entirely within a single lane." *N.J.S.A.* 39:4–88(b).

The Appellate Division affirmed defendant's conviction for driving under the influence, but reversed the determination of the Law Division with respect to *N.J.S.A.* 39:4–88(b). The Appellate Division held that the two clauses of the statute "clearly" describe only one offense: failing to maintain a lane of travel by changing lanes without first ascertaining that the lane change can be conducted safely. Although it did not find that *N.J.S.A.* 39:4–88(b) was ambiguous, the panel nonetheless invoked the rule of lenity to construe *N.J.S.A.* 39:4–88(b) in defendant's favor, citing a divide in the case law construing similar statutes in various states. The panel concluded that given the lack of evidence that defendant's lane changes were unsafe, defendant was not guilty of violating the statute. Accordingly, it reversed defendant's conviction for failure to maintain a single lane under *N.J.S.A.* 39:4–88(b).

## II.

Relying on the only published New Jersey case construing the statute, *State v. Woodruff,* 403 *N.J.Super.* 620, 959 *A.*2d 1233 (Law Div.2008), the State argues that the Appellate Division's single-offense interpretation of *N.J.S.A.* 39:4–88(b) contravenes the plain meaning of the statutory language. It contends that the statute clearly describes two separate and independent offenses, its first clause mandating continuous driving in a single lane of traffic unless the driver is changing lanes, and its second clause requiring the driver to determine whether the lane change can be accomplished safely. Alternatively, the State argues that even if *N.J.S.A.* 39:4–88(b) describes one offense, defendant committed that offense, because his repeated crossing of the fog line and onto the shoulder constituted unsafe operation of his vehicle. Accordingly, the State argues, the evidence supports defendant's conviction, and that conviction should be reinstated.

Defendant contends that *N.J.S.A.* 39:4–88(b) is ambiguous. He urges the Court to adopt the Appellate Division's analysis of the statutory language. Defendant suggests that the Appellate Division applied proper rules of statutory construction to reach its

result. He requests that the Court affirm the Appellate Division's decision.

## III.

We construe a statute that has been part of New Jersey's traffic safety laws since 1931. In its original form, the statute provided:

Whenever any street or highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations,

. . .

(b) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

[L. 1931, c. 247, § 7(b).]

In 1951, the Legislature undertook a comprehensive reform of New Jersey's motor vehicle laws to "revise and bring up to date the New Jersey Traffic Act ... because of the changes in motor vehicle traffic conditions and to bring [the] New Jersey Traffic Act into greater conformity with the 'Uniform Act Regulating Traffic on Highways.'" *Statement to Assembly Bill No. 4*, at 64 (Jan. 15, 1951). That reform, in which New Jersey substantially modeled its motor vehicle laws upon the Uniform Act, left the language of the statute at issue virtually intact. The only revision enacted in 1951 was the substitution of the term "roadway" for the terms "street or highway" so that the amended statute provided:

39:4–88 Traffic on Highways with Marked Lanes

When a roadway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

. . .

b. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

[L. 1951, c. 23, § 47.]

The revision brought *N.J.S.A.* 39:4–88(b) into conformity with Uniform Vehicle Code § 11–309(a), with the exception that New Jersey's statute applies to roadways divided into "clearly marked

lanes" rather than "two or more clearly marked lanes" as set forth in the Code.[2] *Compare N.J.S.A.* 39:4–88(b), *with Unif. Vehicle Code* § 11–309(a). Since 1951, the statute has not been revised.

The issue before the Court, whether *N.J.S.A.* 39:4–88(b) describes two separate offenses or a single offense, is a question of law. Accordingly, the Appellate Division's construction of the statute is subject to plenary review, and this Court is not required to defer to its legal conclusions. *State v. Gandhi,* 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010); *Toll Bros. v. Twp. of W. Windsor,* 173 *N.J.* 502, 549, 803 *A.*2d 53 (2002).

---

[2] All states have enacted laws similar to Uniform Vehicle Code § 11–309(a). Six states delineate the clauses into two separate statutory subsections. *See Me.Rev.Stat. Ann.* tit. 29–A, § 2051 (2011); *Nev.Rev.Stat. Ann.* § 484B.223 (West 2011); *Okla. Stat. Ann.* tit. 47, § 11–309 (West 2011); *Or.Rev.Stat. Ann.* § 811.370 (West 2011); *Tex. Transp. Code Ann.* § 545.060 (West 2011); *Utah Code Ann.* § 41–6a–710 (West 2011). The other states have enacted statutes that include either the precise language of *N.J.S.A.* 39:4–88(b), or language closely analogous to that of our statute. *See Ala.Code* § 32–5A–88 (2011); *Alaska Admin. Code* tit. 13, § 02.085 (2011); *Ariz.Rev.Stat. Ann.* § 28–729 (2011); *Ark.Code Ann.* § 27–51–302 (West 2011); *Cal. Veh.Code* § 21658 (West 2011); *Colo.Rev.Stat. Ann.* § 42–4–1007 (West 2011); *Conn. Gen.Stat. Ann.* § 14–236 (West 2011); *Del.Code Ann.* tit. 21, § 4122 (West 2011); *Fla. Stat. Ann.* § 316.089 (West 2011); *Ga.Code Ann.* § 40–6–48 (West 2011); *Haw.Rev.Stat.* § 291C–49 (West 2011); *Idaho Code Ann.* § 49–637 (West 2011); 625 *Ill. Comp. Stat. Ann.* 5/11–709 (West 2011); *Ind.Code Ann.* § 9–21–8–11 (West 2011); *Iowa Code Ann.* § 321.306 (West 2011); *Kan. Stat. Ann.* § 8–1522 (West 2011); *Ky.Rev.Stat. Ann.* § 189.340 (West 2011); *La.Rev.Stat. Ann.* § 32:79 (West 2011); *Md.Code Ann., Transp.* § 21–309 (West 2011); *Mass. Gen. Laws Ann.* ch. 89, § 4A (West 2011); *Mich. Comp. Laws Ann.* § 257.642 (West 2011); *Minn.Stat. Ann.* § 169.18 (West 2011); *Miss.Code Ann.* § 63–3–603 (West 2011); *Mo. Ann. Stat.* § 304.015 (West 2011); *Mont.Code Ann.* § 61–8–328 (2011); *Neb.Rev.Stat.* § 60–6,139 (2011); *N.H.Rev.Stat. Ann.* § 265:24 (2011); *N.M. Stat. Ann.* § 66–7–317 (West 2011); *N.Y. Veh. & Traf. Law* § 1128 (McKinney 2011); *N.C. Gen.Stat. Ann.* § 20–146 (West 2011); *N.D. Cent.Code Ann.* § 39–10–17 (West 2011); *Ohio Rev.Code Ann.* § 4511.33 (West 2011); 75 *Pa. Cons.Stat. Ann.* § 3309 (West 2011); *R.I. Gen. Laws Ann.* § 31–15–11 (West 2011); *S.C.Code Ann.* § 56–5–1900 (2011); *S.D. Codified Laws* § 32–26–6 (West 2011); *Tenn.Code Ann.* 55–8–123 (West 2011); *Vt. Stat. Ann.* tit. 23, § 1038 (West 2011); *Va.Code Ann.* § 46.2–804 (West 2011); *Wash. Rev.Code Ann.* § 46.61.140 (West 2011); *W. Va.Code Ann.* § 17C–7–9 (West 2011); *Wis. Stat. Ann.* § 346.13 (West 2011); *Wyo. Stat. Ann.* § 31–5–209 (West 2011).

 Familiar principles of statutory construction guide the Court's analysis. The Legislature directs that the words and phrases of its statutes "shall be read and construed in their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." *N.J.S.A.* 1:1–1. The Court's objective is to determine the meaning of the statute to the extent possible by looking to the Legislature's plain language. *Gandhi, supra,* 201 *N.J.* at 176–77, 989 *A.*2d 256; *State v. Smith,* 197 *N.J.* 325, 332–33, 963 *A.*2d 281 (2009); *State v. Froland,* 193 *N.J.* 186, 193–94, 936 *A.*2d 947 (2007); *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If a statute's language is unambiguous, then the Court's "interpretive process is over." *Gandhi, supra,* 201 *N.J.* at 177, 989 *A.*2d 256 (quotation omitted); *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039. It is only when a statute's language is ambiguous that the Court should resort to extrinsic aids, such as "legislative history, committee reports, and contemporaneous construction." *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039 (quotation omitted).

 Guided by these principles, we hold that while courts have adopted two alternative interpretations of *N.J.S.A.* 39:4–88(b), the better construction of the statute is that it consists of two separate, independent clauses, each of which addresses a distinct offense. That conclusion is reflected in the Legislature's use of the legal predicate, which is the component of statutory language that "directs that the legal subject act in the manner prescribed by the legislature . . . [and] is the verb which directs or permits action or inaction." 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 21:8 (7th ed. 2009). *N.J.S.A.* 39:4–88(b) contains two separate legal predicates directing the conduct of drivers: "shall be driven" in the first clause and "shall not be moved" in the second. *Cf. City of Plainfield v. Courier News,* 72 *N.J.* 171, 179 n. 4, 369 *A.*2d 513 (1976) (construing statutory language which used the term "shall" only once to

create only a single mandate). The Legislature's use of the word "shall" in each clause underscores its intent to impose two separate requirements upon the drivers of motor vehicles.

The Legislature's choice to combine these two clauses in a single sentence, connected by the word "and" rather than divided into separate sentences, does not alter the analysis. *See Pine Belt Chevrolet v. Jersey Cent. Power,* 132 *N.J.* 564, 578, 626 *A.*2d 434 (1993). As used in the statute at issue, the word "and" confirms the Legislature's intent that a driver comply with both of the affirmative duties set forth in *N.J.S.A.* 39:4–88(b).

The statute's two clauses address different circumstances. The first clause imposes a continuous requirement upon the driver: to maintain his or her vehicle in a single lane, by avoiding drifting or swerving into an adjoining lane or the shoulder, unless it is not feasible to do so. *See Black's Law Dictionary* 1290 (9th ed. 2009) (defining "practicable" as "reasonably capable of being accomplished; feasible"). Unlike the second clause of *N.J.S.A.* 39:4–88(b), the first clause is not limited to the setting of a highway or road with two or more lanes of traffic proceeding in the same direction, in which a driver could safely change lanes. For example, the first clause of *N.J.S.A.* 39:4–88(b) would apply to a road with one lane of traffic in each direction, and thus addresses a broader range of circumstances than does the statute's second clause.

Moreover, the first clause of *N.J.S.A.* 39:4–88(b) is not limited to circumstances in which the deviation from the lane is demonstrated to be a danger to other drivers. In contrast, the Legislature has specifically identified other traffic violations that require the presence of, and potential danger to, other motorists as an element of the violation. *See, e.g.,* *N.J.S.A.* 39:4–85 (requiring a driver to pass another vehicle "at a safe distance to the left"); *N.J.S.A.* 39:4–89 (prohibiting drivers from following other vehicles "more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway"); *N.J.S.A.* 39:4–126 (prohibiting turning

a vehicle without an appropriate signal "in the event any other traffic may be affected by such movement"); *N.J.S.A.* 39:4–127 (prohibiting the backing or turning of a vehicle into a street if "by so doing it interferes with other vehicles"); *see also Woodruff,* 403 *N.J.Super.* at 626, 959 *A.*2d 1233 ("When the Legislature has intended to condition a violation on the driver's impact on other motorists, it has said so."). By the terms of the first clause of *N.J.S.A.* 39:4–88(b), the mandate to drive within a single lane to the extent practicable applies, whether or not a deviation from that lane imposes a risk to another driver.[3]

The statute's second clause addresses a related, but discrete, mandate of the Code. It requires a driver to ascertain the safety of switching lanes before conducting a lane change. *N.J.S.A.* 39:4–88(b). Unlike the violation described in the first clause of *N.J.S.A.* 39:4–88(b), the violation described in the second clause is avoided if a driver, in a roadway with multiple lanes traveling in the same direction, first determines that departure from a lane may be conducted safely.

The Appellate Division's limitation of *N.J.S.A.* 39:4–88(b) to the violation identified in the statute's second clause would render the first clause inoperative. If *N.J.S.A.* 39:4–88(b) prohibits nothing more than a lane change conducted unsafely as described in the statute's second clause, then the Legislature's language in the first clause would have no meaning. When construing a statute, " '[l]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless.' " *Franklin Tower One, L.L.C. v. N.M.,* 157 *N.J.* 602, 613, 725 *A.*2d 1104 (1999) (quoting *In re Sussex Cnty. Mun. Utils. Auth.,* 198 *N.J.Super.*

---

[3] The Appellate Division suggested that the "first phrase standing alone would not permit lane changes from a left to right lane in order to exit a highway or pull into a parking space. It would not permit pulling onto the shoulder of a highway to change drivers." This interpretation ignores important language in this sixty-year–old statute; the Legislature qualified its mandate to remain in a single lane with the crucial phrase "as nearly as practicable." *See N.J.S.A.* 39:4–88(b); *Woodruff, supra,* 403 *N.J.Super.* at 627–28, 959 *A.*2d 1233.

214, 217, 486 *A*.2d 932 (App.Div.1985)); *see also Buck v. Henry*, 207 *N.J.* 377, 390, 25 *A*.3d 240 (2011); *In re Attorney Gen.'s "Directive on Exit Polling: Media & Non–Partisan Pub. Interest Groups"*, 200 *N.J.* 283, 297–98, 981 *A*.2d 64 (2009); *DKM Residential Props. Corp. v. Twp. of Montgomery*, 182 *N.J.* 296, 307, 865 *A*.2d 649 (2005). The Court's construction of *N.J.S.A.* 39:4–88(b) gives meaning to all of the statute's language, and thereby effects the intent of the Legislature.

Moreover, if *N.J.S.A.* 39:4–88(b) precludes only unsafe lane changes, a driver would not violate the statute even by allowing a vehicle to straddle two lanes or swerve back and forth over the lines defining traffic lanes, unless that conduct created a safety issue. *See State v. Lewis*, 185 *N.J.* 363, 369, 886 *A*.2d 643 (2005) ("[A] court should strive to avoid statutory interpretations that 'lead to absurd or unreasonable results.'" (quoting *State v. Gill*, 47 *N.J.* 441, 444, 221 *A*.2d 521 (1966))); *Twp. of Pennsauken v. Schad*, 160 *N.J.* 156, 170, 733 *A*.2d 1159 (1999). Our construction of *N.J.S.A.* 39:4–88(b) is thus consonant with established principles of statutory construction.

## IV.

Applying statutes that are identical or very similar to the statute before the Court, courts of other states have reached varying conclusions. Several decisions have construed analogous statutes to describe two offenses, as this Court construes *N.J.S.A.* 39:4–88(b). *See People v. Butler*, 81 *Cal.App.3d Supp.* 6, 146 *Cal.Rptr.* 856, 857 (Cal.Ct.App.1978) (construing *Cal. Veh.Code* § 21658 to state "two affirmative duties placed upon the operator of a motor vehicle"); *People v. Smith*, 172 *Ill*.2d 289, 216 *Ill.Dec.* 658, 665 *N.E*.2d 1215, 1218 (1996) (holding that plain language of 625 *Ill. Comp. Stat. Ann.* 5/11–709 "establishes two separate requirements for lane usage"); *State v. Marx*, 289 *Kan.* 657, 215 *P*.3d 601, 612 (2009) (construing *Kan. Stat. Ann.* § 8–1522 to establish "two separate rules of the road," first of which is "temporarily suspended when it becomes impracticable to stay

within the lane markers and when the driver is properly effecting a lane change"); *State v. Mays,* 119 *Ohio St.*3d 406, 894 *N.E.*2d 1204, 1208–09 (2008) (construing *Ohio Rev.Code Ann.* § 4511.33 to require drivers "to remain within the lane markings unless the driver cannot reasonably avoid straying").

Other jurisdictions take a different approach, interpreting the two clauses of analogous state statutes to describe a single offense. *See State v. Tague,* 676 *N.W.*2d 197, 203 (Iowa 2004) (holding that violation of *Iowa Code Ann.* § 321.306 does not occur "unless the driver changes lanes before the driver ascertains that he or she could make such movement with safety"); *Crooks v. State,* 710 *So.*2d 1041, 1043 (Fl.Ct.App.1998) (holding that violation of *Fl. Stat. Ann.* § 316.089(a) requires "evidence that the driver's conduct created a reasonable safety concern"); *Rowe v. State,* 363 *Md.* 424, 769 *A.*2d 879, 883–85 (2001) (construing *Md.Code Ann., Transp.,* § 21–309 to describe one offense); *State v. Lafferty,* 291 *Mont.* 157, 967 *P.*2d 363, 366 (1998) (construing *Mont.Code Ann.* § 61–8–328 to prohibit only unsafe lane changes into other traffic lanes); *State v. McBroom,* 179 *Or.App.* 120, 39 *P.*3d 226, 229 (2002) (holding that two clauses of *Or.Rev.Stat. Ann.* § 811.370 "should be read together"); *Hernandez v. State,* 983 *S.W.*2d 867, 870–72 (Tex.App.1998) (holding that *Tex. Transp. Code Ann.* § 545.060(a) describes one offense). Thus, the courts of our sister states, construing statutes enacted by their respective legislatures, have reached inconsistent results.

The Appellate Division concluded that it was compelled to invoke the rule of lenity "in light of the great divide in cases construing the *Uniform Vehicle Code* § 11–309(a)." The rule of lenity is an important principle of statutory construction; if a statutory ambiguity cannot be resolved by analysis of the relevant text and the use of extrinsic aids, the rule requires that the ambiguity be resolved in favor of the defendant. *State v. Gelman,* 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008) (citing *United States v. Bass,* 404 *U.S.* 336, 348, 92 *S.Ct.* 515, 523, 30 *L.Ed.*2d 488, 497 (1971)). The rule of lenity derives from the principle that "[n]o

one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law." *In re DeMarco,* 83 *N.J.* 25, 36, 414 *A.*2d 1339 (1980).

█ The rule of lenity, however, is not invoked simply because there are competing judicial interpretations of the statutory language, in New Jersey or elsewhere. *See ibid.* ("It does not invariably follow, however, that every time someone can create an argument about the meaning of a penal sanction, the statute is impermissibly vague, or that the lowest penalty arguably applicable must be imposed."); *Sutherland Statutory Construction, supra,* § 59:4 ("A division of judicial authority over the proper construction does not render a statute ambiguous and subject it to the rule of lenity."). Instead, the rule of lenity is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of "all sources of legislative intent." *State v. D.A.,* 191 *N.J.* 158, 165, 923 *A.*2d 217 (2007) (quotation omitted). That is not the case here.

The plain language of *N.J.S.A.* 39:4–88(b) describes two distinct and independent offenses. Defendant was properly convicted for the first of those offenses: the failure to maintain a lane to the extent practicable.

## V.

For the reasons expressed herein, the judgment of the Appellate Division is reversed, and defendant's conviction and sentence for violating *N.J.S.A.* 39:4–88(b) are reinstated.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, ALBIN, HOENS and PATTERSON, and Judge WEFING (temporarily assigned)—6.

*Opposed*—None.

*Not Participating*—Justice LAVECCHIA.