# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4066-17

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SHAWN M. CICALESE,

      Defendant-Appellant.

_____

Argued October 28, 2020 – Decided August 2, 2021

Before Judges Ostrer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-06-1505.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the brief).

Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Nancy P. Scharff, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Shawn Cicalese appeals from his conviction, after a jury trial, of third-degree failure to notify his local police department of his change of address, as required by Megan's Law. See N.J.S.A. 2C:7-2(d)(1). Megan's Law requires an offender, "[u]pon a change of address," to "notify the law enforcement agency with which the person is registered and [to] re-register with the appropriate law enforcement agency no less than 10 days before he intends to first reside at his new address." Ibid. Cicalese contends that, because his failure to notify was involuntary, the trial court should have dismissed the charge. He also argues that, because the Legislature raised the offense from the fourth degree to the third degree after his predicate-offense conviction, his sentence in the third-degree range violates the ex post facto clauses of the United States and New Jersey Constitutions. Because both arguments lack merit, we affirm.

I.

In 2003, Cicalese became subject to Megan's Law and community supervision for life as part of his sentence for third-degree endangering the welfare of a child.

A-4066-17

Twelve years later, Cicalese was properly registered with the local police in Pennsauken, where he lived in a boarding house. But in December 2015, Cicalese was arrested on a parole violation and incarcerated in the Camden County Correctional Facility, where he remained until March 24, 2017.[1]

Cicalese's former parole officer, Eugene Serra, testified that Cicalese, after his release, failed to report in person or to call as required. Serra then tried to find out where Cicalese went. Two parole officers visited Cicalese's old Pennsauken address, where the landlord told them that Cicalese had been evicted (presumably during his incarceration). After that, Serra's team proceeded to check local hospitals, as well as sex-offender registries and prisons in New Jersey and surrounding states. But their efforts were of no avail.

Supporting the failure-to-notify charge, the State's other witness, police officer Michael J. Watkins (who handled Megan's Law registrations for the Pennsauken Police Department), testified that Cicalese never notified the department of his change of address. Watkins testified that "ten days before they . . . move," Megan's Law registrants are "supposed to notify the previous registry . . . where they're going to go"; afterwards, that law-enforcement agency

---

[1] The record does not disclose the facts of the parole violation and the reasons for his incarceration of over a year.

would "notify that jurisdiction that they're moving to."  Watkins also stated that if a Megan's Law registrant is incarcerated, "his address changes to the jail."  So, Watkins explained, Cicalese was "no longer under [Pennsauken's] jurisdiction."  But, when asked if Cicalese still had to notify Pennsauken when he was released, Watkins answered ambiguously:  "To wherever he goes to.  Yes."

Watkins also testified that in 2016, when Cicalese did not appear as required for his annual address-verification, Watkins and another detective tried to locate Cicalese and were told — evidently incorrectly — that Cicalese was not then incarcerated.  But Watkins said that he did not swear out a complaint warrant against Cicalese for failure to notify until after his release from the Camden County Correctional facility in late March 2017.

Cicalese was eventually arrested in Philadelphia on April 18, 2017.[2] Cicalese was then charged in a grand-jury indictment with violating N.J.S.A. 2C:7-2(d)(1), which requires Megan's Law offenders who change addresses to do two things:  notify police at their previous address, and re-register with police at their future address.  The indictment charged Cicalese with violating the first of those requirements; specifically, it charged him with failing to notify police at his former address "as required by Megan's Law, after having been advised of

---

[2]  Cicalese's defense counsel provided the date of arrest to the jury.

his obligation to do so."[3]  It also alleged that the crime occurred on or about March 24, 2017 (when he was released from the Camden facility and did not return to Pennsauken), and did not mention December 2015, when he was first taken into custody.

After the State rested its case, which relied solely on Serra's and Watkins's testimony, Cicalese moved for acquittal.  The ensuing discussion reflected some disagreement over what the law required Cicalese to do.

Defense counsel argued "that the elements of that . . . count [could not] be established based on" the evidence, because the State had not proved that Cicalese had "enough time to re-register."[4]  Counsel also asserted, "[A]ccepting Detective Watkins's representation that if he's incarcerated the supervision

---

[3]  The indictment also charged him with two counts of fourth-degree violating a condition of a special sentence of community supervision for life (CSL); specifically, it charged him with "failing to reside at a parole approved residence," and "failing to report to his assigned parole officer as directed."  See N.J.S.A. 2C:43-6.4(d).  Although CSL violations became third-degree crimes in 2014, we presume Cicalese's charges reflected the prior statute to avoid ex post facto issues.  See State v. Hester, 233 N.J. 381, 385-86 (2018) (holding that the ex post facto clauses barred retroactive application of the 2014 change).

[4]  Counsel evidently used the word "re-register" loosely, as it appears that he was referring to Cicalese's obligation to "notify" Pennsauken, not Cicalese's obligation to "re-register" with law enforcement at his new address.

A-4066-17

would transfer . . . to the City of Camden, he can't in person register if he's incarcerated."

In response, the prosecutor also referred to the registration obligation. He asserted that Watkins "indicated that when someone is released from the County Jail, they are required to register upon their release." Then, he contended that the State had presented "sufficient evidence" for the jury to "decide whether or not [Cicalese] failed to comply with the provisions of Megan's Law, which does require an offender to . . . register within certain time parameters."

In view of Watkins's testimony that jurisdiction shifted to Camden, the judge questioned whether Cicalese had to notify Pennsauken at all. In response, the prosecutor asserted that, notwithstanding Cicalese's incarceration, Pennsauken was Cicalese's "last known address in the community," and "that if he was going to be moving out of the area or lost his residence, then he has ten days to inform the Department" in Pennsauken.[5]

After reviewing the model charge, which tracks the statute, the judge ruled that Cicalese was obliged "to notify Pennsauken of his new address . . . when he would be released from incarceration." He then rejected the suggestion that

---

[5] Confusingly, this statement appeared to suggest that Cicalese had ten days after moving to notify Pennsauken.

A-4066-17

Cicalese had to notify Pennsauken ten days in advance, stating, "I would not impose an obligation when he's incarcerated to notify them." After that, the court denied the motion for acquittal after "giving every reasonable inference to the State."

Defendant did not testify or present any witnesses in his defense.

In summation, defense counsel and the prosecutor again diverged in their statutory interpretation. Defense counsel argued that "Cicalese cannot have registered in Pennsauken. He was in Camden. We actually heard from . . . Watkins his understanding . . . that the next step for Mr. Cicalese would have been to register here, out of the City of Camden."

The prosecutor argued that Cicalese's incarceration changed his address. Citing Watkins, the prosecutor asserted "that when there is a change of address, whether it be voluntarily that you want to move somewhere or involuntarily, . . . where you're essentially being either removed from the residence or you're, in this case, being incarcerated against your will, that is a change of the address." The prosecutor then argued that "under . . . Megan's Law there is a requirement that you register your change of address to the law enforcement agency where you had been residing and that you are to re-register any new residence within ten days of actually staying there or residing there." He added that "there is

7

sufficient evidence that" Cicalese "did not inform Pennsauken that there was a change of address upon his release."

In his jury instructions, the judge explained that the indictment charged that on or about March 24, 2017, Cicalese failed to notify the Pennsauken police department of his "change of address as required by Megan's Law." The judge then echoed the statute, instructing the jury about the obligation to re-register at a person's new address (although the indictment did not charge Cicalese with that offense) as well as the obligation to notify at a person's old address: "A defendant who changed addresses within this State must have notified the law enforcement agency with which he . . . previously registered and must have re-registered with the appropriate law enforcement agency no less than ten days before he intends to first reside at his new address."

Notwithstanding his earlier ruling, the judge did not specify that Cicalese did not have to notify Pennsauken until his release.[6] However, as noted, the judge advised the jury that the indictment charged the failure to notify "[o]n or

---

[6] Before describing the statutory requirement, the judge, confusingly, provided a general description using the word "re-register," stating that "the State must prove . . . that the defendant[,] . . . knowing of his obligation to re-register as a sex offender, knowingly failed to re-register as a sex offender." Later in the jury charge, in explaining unanimity requirements, the judge said, "the Third Count charges the defendant with a failure to re-register, as required by law, by Megan's Law."

about the 24th day of March 2017," and the verdict sheet asked the jury to decide if, on or about March 24, 2017, Cicalese failed to notify the Pennsauken police department "of a change of address as required."

Ultimately, the jury found defendant guilty of the failure-to-notify charge and the two CSL offenses. The court sentenced Cicalese to a five-year term, with two years of parole ineligibility, concurrent with two concurrent eighteen-month terms for the CSL offenses. After Cicalese served more than two years in prison, the trial court granted him bail pending appeal.

## II.

Cicalese raises the following points for our consideration:

POINT I

THE MEGAN'S LAW REGISTRATION CONVICTION SHOULD BE DISMISSED BECAUSE THE PROOF WAS INSUFFICIENT THAT DEFENDANT'S OMISSION WAS VOLUNTARY WHEN HE FAILED TO REGISTER A CHANGE OF ADDRESS BECAUSE HE WAS IN JAIL.

POINT II

THE THIRD-DEGREE CONVICTION UNDER A 2014 AMENDMENT TO MEGAN'S LAW VIOLATED THE EX POST FACTO CLAUSES, AND THE CONVICTION SHOULD BE REDUCED TO THE FOURTH DEGREE — THE DEGREE WHEN DEFENDANT BECAME SUBJECT TO MEGAN'S LAW IN 2003.

III.

A.

We first consider, and reject, defendant's argument that the evidence against him was insufficient to support his conviction for failure to notify.[7]

Defendant contends that his failure to comply with the statute was involuntary, and asserts that no one may be convicted "unless his liability is based on . . . a voluntary act or the omission to perform an act of which he is physically capable." N.J.S.A. 2C:2-1(a). But he constructs this argument on two faulty pillars. First, he assumes that N.J.S.A. 2C:7-2(d)(1) required him to notify the Pennsauken police ten days before he intended to move to his new address.[8] Second, he argues that it was "impossible" for him to notify

---

[7] We also reject the State's argument that defendant, by failing to move for a new trial pursuant to Rule 3:20-1, waived this argument on appeal. Under Rule 2:10-1, a defendant must move for a new trial in order to contend on appeal that a jury verdict was against the weight of the evidence. R. 2:10-1. However, defendant does not reference Rule 3:20-1, nor does he contend the verdict was against the weight of the evidence. Rather, he contends that the court erred in denying his so-called "motion to dismiss" (which was, in substance, a Rule 3:18-1 motion for acquittal). A Rule 3:18-1 motion is distinct from a Rule 3:20-1 motion. See State v. Rodriguez, 141 N.J. Super. 7, 11-12 (App. Div. 1976) (discussing difference between Rule 3:18-1 motion and Rule 3:20-1 motion).

[8] We acknowledge that Watkins appeared to endorse this interpretation, stating that "ten days before [offenders] supposedly move, they're supposed to notify the previous registry that they were at . . . to where they're going to go, and then

Pennsauken police either ten days before his 2015 arrest or ten days before his 2017 release.[9]

We are not convinced that the ten-days-in-advance requirement applies to notifying the police at an old address. To repeat, the law states: "Upon a change of address, a person shall notify the law enforcement agency with which the person is registered and shall re-register with the appropriate law enforcement agency no less than 10 days before he intends to first reside at his new address." N.J.S.A. 2C:7-2(d)(1). A failure to notify the former law-enforcement agency is a separate crime from the failure to register with the new law-enforcement agency. State v. Leahy, 381 N.J. Super. 106, 111 (App. Div. 2005). And because the ten-day requirement appears in the middle of the second half of the sentence (after "and"), it may be plausibly read to apply only to re-registration with police at the new address. According to this reading, a person must notify the current law-enforcement agency "[u]pon a change of address," and must re-register at the "appropriate law enforcement agency" at his new address "no less than 10 days before he intends to first reside" there. This seems reasonable:

_____

at that time, [the previous registry] would notify that jurisdiction." (Emphasis added).

[9] As previously noted, the indictment charged only the latter.

arguably, the police at the place where the offender is headed need to prepare for the offender's arrival, and thus need more notice than the police at the place the offender is leaving. However, the Legislature may have intended that police at both places get advance notice.

Because the statute is susceptible to two plausible interpretations, it is ambiguous. Furthermore, its legislative history sheds no light on whether the ten-day-advance-notice governs both the notification and the re-registration. See DiProspero v. Penn, 183 N.J. 477, 492-93 (2005) (stating that "if there is ambiguity in the statutory language that leads to more than one plausible interpretation," the court "may turn to extrinsic evidence" such as legislative history). The bill statements and committee statements simply track the statutory language. Sponsors' Statement to A. 84, at 4 (Aug. 15, 1994); S.L. & Pub. Safety Comm. Statement to A. 84, at 2 (Sept. 26, 1994).[10] Therefore, we must resolve this ambiguity in a Megan's-Law registrant's favor. See State v.

_____

[10] The Attorney General's Guidelines do not resolve the ambiguity; they merely state that "upon a change of address, offenders must notify the law enforcement agency with which they are registered and must re-register with the new agency at least 10 days prior to the move." Off. of the Att'y Gen., Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws 9 (rev. Feb. 2007). The Court referenced the statute in In re T.T., 188 N.J. 321, 327 (2006), but did not resolve the ambiguity, stating, "Within prescribed time periods, a registrant must notify appropriate law enforcement upon a change of address, job, or school."

A-4066-17

Regis, 208 N.J. 439, 451 (2011) (stating that when textual analysis and "extrinsic aids" do not resolve ambiguity, courts must use rule of lenity and resolve ambiguity in defendant's favor).  In so doing, we conclude that a registrant must notify the law-enforcement agency with which the person is registered "[u]pon a change of address."

But even if the statute does require notification ten days before a move, and even if Cicalese was unable to provide that advance notice (for example, if he was released without warning from the Camden jail), any impossibility delayed — but did not eliminate — his duty to notify the Pennsauken police.[11]

In this regard, we find instructive a Second-Circuit decision, United States v. Pelose, 538 F.2d 41 (2d Cir. 1976).  There, the defendant, who was charged with willful failure to pay taxes, argued that he was not guilty because illness prevented him from filing a tax return on the due date.  Id. at 43-45.  The court rejected his argument, ruling that even if a defendant is incapable of complying with the law on a fixed date, he is not "automatically," perpetually "immunized" against prosecution if he later becomes capable of compliance but fails to comply.  Id. at 44-45.  Likewise, here, even if Cicalese was physically incapable

---

[11]  The State presented no evidence regarding when Cicalese learned he would be released, or even regarding whether he could communicate with Pennsauken police from the jail.

of providing ten days' notice to Pennsauken before his release, he was obliged to provide notice when he could.

In fact, the indictment did not charge Cicalese with failing to notify Pennsauken ten days before his release; it charged him with failing to notify Pennsauken on or about March 24, 2017 — the day he was released. And the verdict sheet focused on the same date. There was sufficient evidence for the jury to find that Cicalese could have, but did not, notify Pennsauken on or about March 24, 2017 of his change of address.[12]

In sum, we reject Cicalese's argument that, because he could not comply with the law, his conviction should be reversed.

---

[12] Because defendant did not raise the issue, we do not decide whether the judge's reference to ten days' advance notice may have created uncertainty in the jurors' minds and led to a non-unanimous verdict, with some jurors concluding that Cicalese was guilty because he did not give advance notice. As we have discussed, the judge instructed that the alleged crime occurred on or about March 24, 2017, and the verdict sheet referred to that date, too. Also, based on the date charged, we assume without deciding that a defendant's address does not change, for notification and re-registration purposes, when he or she is involuntarily incarcerated; rather, we assume that the address changes when a subsequently-incarcerated Megan's-Law offender does not return to his or her former address in the community after release. Notably, the statute refers to an offender's subjective intent to reside at a new address; we assume that offenders do not intend to reside in jails or prisons. Cf. State v. Lopez-Carrera, 245 N.J. 596, 601 (2021) (holding that Criminal Justice Reform Act addresses risk of voluntary failure to appear in New Jersey court, not involuntary failure to appear that results from arrest by federal immigration officials).

A-4066-17

B.

Cicalese's contention that his third-degree conviction violated the ex post facto clauses is even less persuasive. Our Supreme Court's recent ruling in State v. Brown disposes of his argument. See State v. Brown, 245 N.J. 78, 81 (2021).

In Brown, other provisions of Megan's Law (that is, N.J.S.A. 2C:7-2(a)(1) and (c)) required the defendants to register with police after release from prison. Id. at 82. When the defendants were convicted of predicate offenses, failure to register was a fourth-degree crime. Ibid. But in 2007, the Legislature made it a third-degree crime. Id. at 82-83. Several years later (specifically, between 2014 and 2015), the defendants failed to register and were subsequently charged with third-degree crimes. Id. at 83. They challenged the increase in degree on ex post facto grounds. Ibid.

The case eventually reached the Supreme Court, which held that because "[t]he Legislature is free to increase the penalty for the offense of failure to comply with the regulatory registration requirement . . . without violating ex post facto principles as to [the defendants'] predicate offenses," the "defendants suffered no ex post facto violation as a result of being charged with failure-to-register offenses bearing the increased degree" where they "committed the

15

charged offenses after the effective date of the . . . amendments, of which each had fair notice." Id. at 81-82, 85.

The same principle applies here. Thus, defendant's challenge to his sentence must fail.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant written discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4066-17