64 A.3d 558

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ERIC
CLEMENTE RANGEL A/K/A HUGO OLIVARES,
DEFENDANT–RESPONDENT.

Argued January 14, 2013—Decided April 29, 2013.

*Paula C. Jordao,* Assistant Prosecutor, argued the cause for appellant (*Fredric M. Knapp,* Acting Morris County Prosecutor, attorney).

*Jason A. Coe,* Assistant Deputy Public Defender, argued the cause for respondent (*Joseph E. Krakora,* attorney).

Justice ALBIN delivered the opinion of the Court.

In this case of first impression, we must determine whether defendant Eric Rangel was properly convicted of aggravated sexual assault under *N.J.S.A.* 2C:14–2(a)(3).

A defendant is guilty of first-degree "aggravated sexual assault if he commits an act of sexual penetration . . . [and] uses physical force or coercion and *severe personal injury is sustained by the victim.*" *N.J.S.A.* 2C:14–2(a)(6) (emphasis added). A defendant is also guilty of first-degree aggravated sexual assault if the act of penetration occurs "during the commission, or attempted commission, . . . [of] aggravated assault *on another.*" *N.J.S.A.* 2C:14–2(a)(3) (emphasis added). The issue before us is whether the language in (a)(3), "on another," refers to the victim, a person other than the victim, or both. The trial court denied defendant's motion for a judgment of acquittal, finding that (a)(3) includes aggravated assault on the victim. The Appellate Division reversed, determining that (a)(3) excludes the victim.

We conclude that, based on the statute's plain language and a textual reading of the statute as a whole, the phrase "on another" refers to someone other than the victim. A contrary interpretation would mean that, under (a)(3), an *attempt* to commit significant bodily injury to the victim, although no injury was caused, *N.J.S.A.* 2C:12–1(b)(7), would elevate sexual assault to aggravated sexual assault. That interpretation would render a nullity the requirement under (a)(6) that the State prove the victim sustained "severe personal injury" for an aggravated-sexual-assault conviction. Moreover, the Legislature refers repeatedly to "victim" throughout *N.J.S.A.* 2C:14–2(a), (b), and (c) when identifying the

target of the sexual assault. We are not persuaded that the Legislature intended to speak elliptically about a victim as "another" in (a)(3) but specifically about "victim" in so many other provisions of the statute.

We affirm the judgment of the Appellate Division. We do not disturb defendant's other convictions for sexual assault, aggravated assault, and obstructing the administration of justice. We remand for resentencing on those convictions.

## I.

### A.

A Morris County grand jury charged defendant in an indictment with first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(3); second-degree attempted aggravated sexual assault, *N.J.S.A.* 2C:5–1(a)(3) and 2C:14–2(a)(3); second-degree sexual assault, *N.J.S.A.* 2C:14–2(c)(1); second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1); and fourth-degree obstructing the administration of law, *N.J.S.A.* 2C:29–1.[1] At defendant's jury trial, the State presented the following evidence.

### B.

In the early morning hours of April 22, 2007, P.F., then eighteen years old, left a birthday party in Lake Hiawatha and began walking home. Part of the way she was accompanied by two friends, who eventually broke off and went in different directions. Afterwards, P.F. noticed a stranger, defendant Eric Clemente Rangel, rushing toward her while angrily yelling in Spanish. P.F. ran and dialed 9–1–1 with her cell phone. She told the dispatcher that she was being pursued by a man and gave her location. While speaking with the dispatcher, P.F. was attacked from behind by defendant. He pummeled her face with his fists,

---

[1] Defendant was also indicted for third-degree criminal restraint, *N.J.S.A.* 2C.13–2(b), but this charge was dismissed before trial.

causing her to fall and strike her head on the concrete pavement or a pole. As she lay on the ground, defendant continued to punch her face as she fought back. P.F. grew weak from the struggle and believed that "one more hit would just [ ] kill [her]." Fearing for her life, she stopped resisting, "closed [her] eyes[,] and laid there defenseless." As P.F. lay motionless, defendant ripped off her pants and underwear.

Defendant then touched P.F.'s vagina with his fingers. P.F. next heard defendant remove his belt and felt what she thought was his penis touching the lips of her vagina. At about that moment, police officers arrived and found defendant kneeling over P.F. Defendant hurriedly pulled his pants up and attempted to flee, but was immediately apprehended and taken into custody. P.F. was transported by ambulance to Saint Claire's Hospital. There, she was treated by an emergency-room physician and examined by a nurse specializing in sexual-abuse cases. Her nose was bloodied and swollen, and her mouth and lips were swollen too. She had suffered a "very unusual" bone fracture at the base of the nose. She also had a large bump on her head and felt pain there. P.F., a high school senior, missed a number of school days and could not participate in physical education for the remainder of the year.

## C.

At the conclusion of the State's case, Rangel moved for a judgment of acquittal on the first-degree aggravated-sexual-assault charge, *N.J.S.A.* 2C:14–2(a)(3). He pointed to an absence of proof that he had committed an act of sexual penetration during an "aggravated assault on another"—an essential requirement of the (a)(3) offense. Defendant contended that the words "on another" referred to a person other than the victim. He further noted that assaultive conduct on the victim elevating a sexual assault to an aggravated sexual assault is contained in *N.J.S.A.* 2C:14–2(a)(6), which requires evidence that a defendant used "physical force or coercion" and caused "severe personal injury."

The trial court denied the motion for judgment of acquittal.[2] The court found that the phrase in (a)(3)—"aggravated assault on another"—refers "to acts upon the victim." It viewed (a)(3) as an "enhancement feature" that responded to the "additional threat of physical harm to the victim that's over and above the act of penetration or the violent act." The court did not believe that, in passing (a)(3), the Legislature had in mind the "absurd result" of punishing a defendant for "penetrating the victim against the victim's will and simultaneously committing an aggravated assault upon the boyfriend."

### D.

The jury convicted defendant on all counts. The court sentenced defendant on the aggravated-sexual-assault charge to a twenty-year term of imprisonment, subject to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, and to parole supervision for life, and ordered him to comply with the registration and community notification requirements of Megan's Law, *N.J.S.A.* 2C:7–1 to –23. He also was sentenced to a consecutive seven-year NERA term and to a three-year parole-supervision period on the aggravated-assault charge and to a concurrent 365–day term on the obstructing charge. The attempted aggravated-sexual-assault and sexual-assault convictions were merged into the aggravated-sexual-assault conviction. All appropriate fines and penalties were imposed.

### II.

The Appellate Division reversed defendant's aggravated-sexual-assault conviction, "conclud[ing] that the proper interpretation of the phrase 'on another' in [*N.J.S.A.* 2C:14–2(a)(3) ] is that the aggravated assault must be on a third person, committed for the purpose of compelling the submission of the sexual assault victim."

---

[2] The court commented that the State did not present the (a)(6) charge to the grand jury or the grand jury declined to return an indictment on that charge.

*State v. Rangel,* 422 *N.J.Super.* 1, 3, 25 *A.*3d 1183 (App.Div.2011). Judge LeWinn, writing for the panel, reasoned that the "on another" language deals with "the situation in which an actor commits an aggravated assault, or attempts to commit such an assault, upon a third person such as a spouse or child, in order to compel a victim to submit to a sexual assault." *Id.* at 9, 25 *A.*3d 1183.

The panel canvassed other jurisdictions with statutes that provide for enhanced penalties for sexual assaults predicated on the use of "third-party compulsion" to overcome a victim's will. *Ibid.* Because *N.J.S.A.* 2C:14–2(a)(6) addresses the nature and degree of physical force against a victim that will raise a sexual assault to an aggravated sexual assault—"severe personal injury"—the panel determined that "the reference to 'aggravated assault on another' in section (3) as encompassing an aggravated assault on the victim would render subsection (6) redundant." *Id.* at 10, 25 *A.*3d 1183. In undertaking this textual analysis, the panel noted that "[n]o legislative history is available . . . to shed light on the particular language at issue." *Id.* at 11, 25 *A.*3d 1183. Last, the panel held that, at best, *N.J.S.A.* 2C:14–2(a)'s "inclusion of section (6) renders the phrase 'on another' in section (3) ambiguous," thus implicating the doctrine of lenity and "requiring resolution 'in favor of the defendant.' " *Ibid.* (quoting *State v. Gelman,* 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008)). Accordingly, the panel entered judgments of acquittal on the convictions for aggravated sexual assault and attempted aggravated sexual assault, both of which were predicated on violations of section (a)(3) of *N.J.S.A.* 2C:14–2. *Id.* at 12, 25 *A.*3d 1183. It remanded for resentencing on all remaining counts, including the previously merged count of sexual assault. *Ibid.*[3]

The State filed a petition for certification, contending that the "Appellate Division erred in holding that the 'proper interpretation of the phrase "on another" in [*N.J.S.A.* 2C:14–2(a)(3) ] is that

---

[3] Other issues raised by defendant before the Appellate Division are not relevant to this appeal. *See Rangel, supra,* 422 *N.J.Super.* at 7, 25 *A.*3d 1183.

the aggravated assault must be on a third person,'" quoting *Rangel, supra,* 422 *N.J.Super.* at 3, 25 *A.*3d 1183. We granted certification to review this issue. *State v. Rangel,* 209 *N.J.* 233, 36 *A.*3d 1065 (2012).

### III.

In urging this Court to reverse the Appellate Division and reinstate defendant's aggravated-sexual-assault and attempted aggravated-sexual-assault convictions, the State contends that the Appellate Division mistakenly construed the language in *N.J.S.A.* 2C:14–2(a)(3)—"aggravated assault on another"—to apply to an assault only on a third person "'in order to compel a victim to submit to a sexual assault,'" quoting *Rangel, supra,* 422 *N.J.Super.* at 9, 25 *A.*3d 1183. First, the State argues that *State v. Cole,* 120 *N.J.* 321, 576 *A.*2d 864 (1990), a case in which the sole issue before the Court was merger, should govern the outcome here. In *Cole,* we concluded that a defendant's convictions for robbery, aggravated assault, and kidnapping did not merge with his aggravated-sexual-assault conviction, *N.J.S.A.* 2C:14–2(a)(3). *Cole, supra,* 120 *N.J.* at 322, 576 *A.*2d 864. The State maintains that "this Court was aware that the aggravated sexual assault was committed on the same victim" in *Cole* and, from this, extrapolates that the Court endorsed the interpretation of "aggravated assault on another" in (a)(3) as embracing the victim.

Second, in challenging the Appellate Division's ruling, the State makes a number of other points: (1) *N.J.S.A.* 2C:14–2(a)(3) is "not ambiguous"—"[i]t is clear that the victim is the 'another' person of the aggravated assault;" (2) "that a physical assault during the course of a sexual assault could be covered by section [a](6) discounts the types of injuries that are not included in the definition of 'severe bodily injury'"; (3) a defendant should not have an incentive to inflict an injury less than "severe personal injury" to escape a charge of aggravated sexual assault; and (4) the legislative history of *N.J.S.A.* 2C:14–2(a)(3) does not "indicate

that the statute requires that the [defendant] victimize two separate victims."

Defendant counters that *Cole* provides no guidance because it does not address in any way the interpretive issue on which this Court granted certification. In concluding that the phrase "aggravated assault on another" in *N.J.S.A.* 2C:14–2(a)(3) refers to a person other than the sexual assault victim, defendant generally relies on the Appellate Division's statutory analysis.

## IV.

We reject the State's argument that *Cole* has any precedential value to this case. Our focus in *Cole* involved solely the doctrine of merger. The meaning of "aggravated assault on another" in *N.J.S.A.* 2C:14–2(a)(3) was not the subject of any discussion in *Cole*. Indeed, *Cole, supra,* never mentions the language "aggravated assault on another" in analyzing the merger issue. 120 *N.J.* at 321–35, 576 *A.*2d 864. The State also cites another merger case, *State v. Adams,* 227 *N.J.Super.* 51, 61, 545 *A.*2d 798 (App.Div.), *certif. denied,* 113 *N.J.* 642, 552 *A.*2d 167 (1988) as authority. In *Adams, supra,* the Appellate Division addressed whether defendant's burglary and criminal sexual contact convictions merged into his attempted aggravated sexual assault conviction. 227 *N.J.Super.* at 54, 545 *A.*2d 798. Like in *Cole,* the court in *Adams* was not asked to determine whether the phrase "aggravated assault on another" in *N.J.S.A.* 2C:14–2(a)(3) excludes the victim. *Ibid.* Neither *Cole* nor *Adams* sheds any light on the issue before us.

## V.

The preeminent issue in this case is one of statutory interpretation. Our charge is to construe the meaning of *N.J.S.A.* 2C:14–2(a)(3), first by looking at the actual contested words and then by viewing them in the setting of a larger enactment addressing sexual assaults. The primary goal of all statutory interpretation is to give effect to the Legislature's intent. *See Gelman,*

*supra*, 195 *N.J.* at 482, 950 *A.*2d 879 (citing *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005)). In carrying out that goal, we begin by looking at the statute's plain language, giving words "their ordinary meaning and significance." *DiProspero, supra*, 183 *N.J.* at 492, 874 *A.*2d 1039. We do not view words and phrases in isolation but rather in their proper context and in relationship to other parts of a statute, so that meaning can be given to the whole of an enactment. *See Burnett v. Cnty. of Bergen*, 198 *N.J.* 408, 424–25, 968 *A.*2d 1151 (2009). We do not read one part of a statute in a way that would render another part redundant or even absurd. *See State v. Regis*, 208 *N.J.* 439, 449–50, 32 *A.*3d 1109 (2011) (internal citations omitted). We presume that the Legislature acted to create a logical scheme and should not look to impute avoidable contradictions. *See State v. Hudson*, 209 *N.J.* 513, 542, 39 *A.*3d 150 (2012) (citing *State v. Haliski*, 140 *N.J.* 1, 9, 656 *A.*2d 1246 (1995)). That is, we should not give a strained interpretation so that one statutory clause is hopelessly at odds with another. *Ibid.* If giving an enactment's words their commonsense and ordinary meaning reveals legislative intent, our mission is complete. *Gelman, supra*, 195 *N.J.* at 482, 950 *A.*2d 879 (citing *DiProspero, supra*, 183 *N.J.* at 477, 874 *A.*2d 1039). "[I]f the statutory language is susceptible to 'more than one plausible interpretation,'" then we can "turn to such extrinsic aids as legislative history." *Id.* at 482, 950 *A.*2d 879 (quoting *DiProspero, supra*, 183 *N.J.* at 492–93, 874 *A.*2d 1039).

## VI.

### A.

We begin, as we must, with the language of the statute at issue. *N.J.S.A.* 2C:14–2 describes the various forms of criminal sexual conduct that constitute the crime of first-degree aggravated sexual assault:

a. An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:

(1) The victim is less than 13 years old;

(2) The victim is at least 13 but less than 16 years old;  and

    (a) The actor is related to the victim by blood or affinity to the third degree, or

    (b) The actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional, or occupational status, or

    (c) The actor is a resource family parent, a guardian, or stands in loco parentis within the household;

(3) The act is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnapping, homicide, *aggravated assault on another,* burglary, arson or criminal escape;

(4) The actor is armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and threatens by word or gesture to use the weapon or object;

(5) The actor is aided or abetted by one or more other persons and the actor uses physical force or coercion;

(6) The actor uses physical force or coercion and *severe personal injury is sustained by the victim;*

(7) The victim is one whom the actor knew or should have known was physically helpless, mentally incapacitated, or had a mental disease or defect which rendered the victim temporarily or permanently incapable of understanding the nature of his conduct, including, but not limited to, being incapable of providing consent.
[*N.J.S.A.* 2C:14-2 (emphasis added).]

█ The focus here is on the term "aggravated assault on another" in section 2C:14–2(a)(3). Does the word "another" refer to the victim, a third person, or both? The answer to that question requires an analysis not only of the word, but surrounding provisions and the objectives the Legislature sought to achieve.

The two most serious forms of sexual violence are denominated as second-degree sexual assault and first-degree aggravated sexual assault. One distinguishing factor between sexual assault and aggravated sexual assault is the degree of injury inflicted on the victim. *See* Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:14 (2012) (The Criminal Code "created categories [of sexual offenses] based generally on intensity of contact and potential for serious injury").

One form of sexual assault occurs when a defendant "commits an act of sexual penetration with another person" and "uses physical force or coercion, but the victim *does not sustain severe personal injury.*" *N.J.S.A.* 2C:14–2(c)(1) (emphasis added). One

form of aggravated sexual assault occurs when a defendant "uses physical force or coercion and *severe personal injury is sustained by the victim.*" *N.J.S.A.* 2C:14–2(a)(6) (emphasis added). In this context, what elevates sexual assault to aggravated sexual assault is the additional commission of an aggravated assault causing "severe personal injury" to the victim. "Severe personal injury" is defined as "severe bodily injury, disfigurement, disease, incapacitating mental anguish or chronic pain." *N.J.S.A.* 2C:14–1(f). Clearly, the Legislature considered the fault line between a (c)(1) and an (a)(6) offense to be the enhanced violence and injury to the victim—"severe personal injury." Causing severe bodily injury during the commission of a sexual assault enhances the penalty from one punishable by a term of up to ten years—sexual assault, *N.J.S.A.* 2C:14–2(c)(1), *N.J.S.A.* 2C:43–6(a)(2)—to one punishable by a term of up to twenty years—aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(6), *N.J.S.A.* 2C:43–6(a)(1).

The State urges us to read *N.J.S.A.* 2C:14–2(a)(3) in a way that would render that fault line meaningless. *N.J.S.A.* 2C:14–2(a)(3) lists seven predicate offenses that elevate the crime of second-degree sexual assault to first-degree aggravated sexual assault. Here, we focus on one of those predicate offenses. Under (a)(3), when, in addition to sexually penetrating a victim, a defendant engages in "the commission, or attempted commission, . . . [of] aggravated assault on another," he is guilty of aggravated sexual assault. *N.J.S.A.* 2C:14–2(a)(3). If, as the State claims, the "on another" refers to the victim, not a third party, then the (a)(6) requirement of "severe personal injury" is read out of the statute. That is because aggravated assault, as defined in *N.J.S.A.* 2C:12–1(b), includes: causing or *attempting* to cause *serious* bodily injury, *N.J.S.A.* 2C:12–1(b)(1), and causing or *attempting* to cause *significant* bodily injury, *N.J.S.A.* 2C:12–1(b)(7) (emphasis added). Under (a)(3), "aggravated assault on another" does not require the infliction of an injury, only the attempt to do so. It is difficult to imagine why the Legislature would require "severe personal injury" to the victim in (a)(6), to elevate sexual assault to aggravated sexual assault, if, as the State contends, the attempt to cause

significant bodily injury to the victim in (a)(3), which results in no injury, elevates sexual assault to aggravated sexual assault.

In keeping with our canons of statutory construction, we must try to read the various parts of *N.J.S.A.* 2C:14–2 so that none are rendered meaningless. *See Regis, supra,* 208 *N.J.* at 449–50, 32 *A.*3d 1109. One sensible reading of the statutory scheme is that the "severe personal injury" provision of *N.J.S.A.* 2C:14–2(a)(6) is intended to punish the enhanced violence committed *against the victim,* whereas the "aggravated assault on another" provision of *N.J.S.A.* 2C:14–2(a)(3) is intended to punish the accompanying violence *against a third person*—perhaps a relative, friend, or other person—that is used as a means to render more vulnerable or exert control over the sexual assault victim. The assault on a third person also may act as an additional form of coercion on the victim.

Like our State, many jurisdictions criminalize the compulsion on a sexual assault victim when a third party is attacked during the commission of the sexual assault. *See, e.g., Conn. Gen.Stat.* § 53a–70(a) (2013) (elevating sexual assault to a first-degree crime when the defendant "compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by threat of use of force against such other person or against a third person"); *Cal. Pen.Code* § 261(a)(2) (Deering 2013) (defining rape as act of sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another"); *see also Rangel, supra,* 422 *N.J.Super.* at 9, 25 *A.*3d 1183 (collecting similar provisions from other jurisdictions). *N.J.S.A.* 2C:14–2(a)(3) responds to the additional egregious circumstances of an aggravated assault on a third person by elevating the sexual assault to a first-degree crime.

The State's position is also undermined by the fact that, of the seven predicate offenses that elevate sexual assault to a first-degree offense, only aggravated assault is modified by the term "on another." *N.J.S.A.* 2C:14–2(a)(3) provides that a sexual pen-

etration of a victim is an aggravated sexual assault when "[t]he act is committed during the commission, or attempted commission, ... of robbery, kidnapping, homicide, aggravated assault *on another*, burglary, arson or criminal escape." (Emphasis added). If, as the State suggests, "on another" refers to the victim, it is difficult to comprehend the Legislature's purpose in not using the term for such predicate crimes as kidnapping, robbery or burglary in (a)(3). No one would question that if a sexual assault victim were also the target of a kidnapping, robbery, or burglary, the offense would be elevated to a first-degree crime under (a)(3). For the same reason, no one could question that the (a)(3) aggravated assault would refer to the victim if the words "on another" did not follow aggravated assault. The most plausible explanation is that, having addressed an aggravated assault on the victim in (a)(6), the Legislature intended to refer to a third party as "another" in (a)(3). *See Regis, supra,* 208 *N.J.* at 449, 32 *A.*3d 1109 (citing *Franklin Tower One, L.L.C. v. N.M.,* 157 *N.J.* 602, 613, 725 *A.*2d 1104 (1999) (stating that every word is presumed to have import and none to be mere surplusage)).

Furthermore, the Legislature repeatedly used the word "victim" to denote the target of an aggravated sexual assault throughout *N.J.S.A.* 2C:14–2(a). *See, e.g., N.J.S.A.* 2C:14–2(a)(1) (stating that aggravated sexual assault is committed when the "*victim* " is "less than 13 years old"); *N.J.S.A.* 2C:14–2(a)(2)(a)–(b) (same when "*victim* is at least 13 but less than 16" and "[t]he actor is related to the *victim* " or "has supervisory or disciplinary power over the *victim* by virtue of the actor's legal, professional, or occupational status"); *N.J.S.A.* 2C:14–2(a)(4) (same when "actor is armed with a weapon or any object fashioned in such a manner as to lead the *victim* to reasonably believe it to be a weapon and threatens ... to use the weapon"); *N.J.S.A.* 2C:14–2(a)(7) (same when "*victim* is one whom the actor knew or should have known was physically helpless, mentally incapacitated, or had a mental disease or defect which rendered the *victim* ... incapable of understanding the nature of his conduct") (all emphasis added). The Legislature uses the word "victim" similarly in referring to the target of a

sexual assault throughout *N.J.S.A.* 2C:14–2(b) and (c). The Legislature knew how to use the word "victim" to make the precise point it intended to convey.

■ Words make a difference. "[W]hen the Legislature includes limiting language in one part of a statute, but leaves it out of another," a court should assume that it intended a different meaning. *Ryan v. Renny*, 203 *N.J.* 37, 58, 999 *A.2d* 427 (2010) (citations omitted). We cannot, as the State urges, equate the term "another" with "victim" in (a)(3).

### B.

A review of the legislative history of *N.J.S.A.* 2C:14–2(a) does not assist our textual analysis. Unlike most parts of the current New Jersey Code of Criminal Justice, the Code's sexual assault provisions are not derived from the 1971 New Jersey Criminal Law Revision Commission's Final Report and Commentary on the proposed New Jersey Penal Code. *See State in the Interest of M.T.S.*, 129 *N.J.* 422, 439–40, 609 *A.2d* 1266 (1992). In the Final Report, the Commission recommended legislation on sexual assault that was virtually identical to that of the Model Penal Code. *Id.* at 439, 609 *A.2d* 1266 (citing New Jersey Criminal Law Revision Commission, *The New Jersey Penal Code, Vol. I: Report and Penal Code* (1971); *M.P.C.* §§ 213.1 to 213.4). The Commission's proposal faced considerable criticism from feminist groups, and ultimately the Legislature rejected that portion of the Report. *Id.* at 439–40, 609 *A.2d* 1266.

Instead, the Legislature enacted, in part, statutory provisions based on a model statute drafted by the Center for Rape Concern in Philadelphia (Center), intended "to remove all features deemed contrary to the interests of victims of rape." Cannel, *supra*, comment 1 on *N.J.S.A.* 2C:14 (cited in *M.T.S., supra*, 129 *N.J.* at 440, 609 *A.2d* 1266). Although the aggravated-sexual-assault section of the Center's proposed statute resembles the final product of the Code of Criminal Justice, *N.J.S.A.* 2C:14–2(a)(3), *see L.* 1978, *c.* 95, § 2C:14–2, eff. Sept. 1, 1979, the Center's proposal did

not include the precise statutory provisions at issue in this case. *See* Leigh Bienen, *Rape II*, 3 *Women's Rts. L. Rep.* 90, 92 (1977).

In the end, a survey of the legislative history neither adds nor detracts from our plain reading and textual analysis of *N.J.S.A.* 2C:14–2(a).

## C.

Last, if there were ambiguity in the statutory provisions that we have analyzed, we would be guided by the doctrine of lenity because we are construing a criminal statute. That doctrine "holds that when interpreting a criminal statute, ambiguities that cannot be resolved by either the statute's text or extrinsic aids must be resolved in favor of the defendant." *Gelman, supra,* 195 *N.J.* at 482, 950 *A.*2d 879 (citing *United States v. Bass,* 404 *U.S.* 336, 348, 92 *S.Ct.* 515, 523, 30 *L.Ed.*2d 488, 497 (1971) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.")). We are persuaded, however, that a plain reading of the contested statutory language in *N.J.S.A.* 2C:14–2, when viewed in its proper context and in light of the Legislature's objectives, leaves no ambiguity. Therefore, we need not rely on the doctrine of lenity.

## VII.

We conclude that the Appellate Division correctly entered judgments of acquittal on the charges of aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(3), and attempted aggravated sexual assault, *N.J.S.A.* 2C:5–1(a)(3) and *N.J.S.A.* 2C:14–2(a)(3). We in no way suggest that, on the record before us, a jury could not have convicted defendant of aggravated sexual assault for causing severe bodily injury under *N.J.S.A.* 2C:14–2(a)(6). The victim suffered a vicious beating at the hands of defendant and sustained considerable injuries to her face, including a bone fracture, bleeding, and swelling, and she lost days from school and could not attend physical education for the remainder of the school year. The question of whether the harm inflicted on P.F. constituted

"severe bodily injury, disfigurement, disease, incapacitating mental anguish or chronic pain," is not before us. *N.J.S.A.* 2C:14–1(f) (defining "severe personal injury"). The State did not charge defendant with an (a)(6) offense.

## VIII.

We affirm the judgment of the Appellate Division dismissing the convictions for first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(3), and second-degree attempted aggravated sexual assault, *N.J.S.A.* 2C:5–1(a)(3) and *N.J.S.A.* 2C:14–2(a)(3). We agree with the Appellate Division that defendant must be resentenced on all remaining convictions, including the second-degree sexual-assault conviction, which had been merged into the now dismissed aggravated-sexual-assault conviction. We remand to the trial court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, HOENS, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.

*For affirmance and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and CUFF (t/a)—6.

*Opposed*—None.

Judge RODRÍGUEZ (temporarily assigned) did not participate.