**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1525-18T1

LINDA A. WEJNERT,
Individually and as the
Administratrix of the ESTATE
OF ROY WEJNERT, deceased,

     Plaintiff-Appellant,

v.

MCCAIN FOODS USA, INC.,

     Defendant-Respondent,

and

D.O. PROPERTIES, INC.,

     Defendant.

_____

Argued October 21, 2019 – Decided March 18, 2020

Before Judges Fasciale, Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-2770-16.

James Gordon Begley III argued the cause for appellant (Cohen, Placitella & Roth, PC, attorneys; James Gordon Begley III, of counsel and on the briefs).

David A. Abrams argued the cause for respondent (Strongin Rothman & Abrams, LLP, attorneys; David A. Abrams and Yelena Graves, on the brief).

PER CURIAM

Plaintiff Linda A. Wejnert appeals from an October 31, 2018 order denying her motion for reconsideration of an August 17, 2018 order granting defendant McCain Foods USA, Inc.'s motion for summary judgment, which dismissed plaintiff's wrongful death and survivorship action. Plaintiff's husband, Roy Wejnert (decedent), died when a 993-pound Langen electric control panel fell on him as he tried to salvage its parts. At that time, decedent was employed by non-party D.O. Productions, LLC (D.O. Productions) at a plant that produced frozen pizzas.[1] Plaintiff sued defendant, the former owner of the plant, alleging that defendant was liable under Restatement (Second) of Torts § 353 (Am. Law Inst. 1965). Specifically, plaintiff alleged that defendant decommissioned the panel when it owned the plant, knew or should have known

---

[1] Presumably, plaintiff did not sue D.O. Productions because of the Workers' Compensation Act exclusive remedy provision. See N.J.S.A. 34:15-8.

that it failed to safely store the panel, and failed to disclose the dangerous condition of the panel when it sold the plant to D.O. Productions.

The trial judge granted defendant's motion for summary judgment, determining that no liability existed under Restatement (Second) of Torts § 353 because there was no dispute that D.O. Productions' employees discovered the panel's condition a week before the accident, and all of defendant's actual or constructive knowledge of the panel's condition transferred to D.O. Productions upon the sale of the plant because defendant's employees also transferred to D.O. Productions. Having reviewed the record, and in light of the applicable law, we reverse and remand for further proceedings.

We discern the following facts from the record. Defendant is a business that produces, markets, and sells food products. Before October 31, 2014, it owned a business that operated a plant producing frozen pizzas. Defendant owned the real estate, the plant, and the manufacturing equipment inside the plant. On October 31, 2014, by way of an asset purchase agreement, defendant sold the business' real property to D.O. Properties, Inc. and the business and equipment to D.O. Productions.[2] Defendant guaranteed that "the [property], the

_____

[2] D.O. Productions and D.O. Properties, Inc., n/k/a 11 Gregg Corporation, are both affiliated with the Dr. Oetker Group. D.O. Properties, Inc. leased the real estate to D.O. Productions on the date of the sale.

A-1525-18T1

current uses thereof and the conduct of the US [b]usiness on the [property] comply in all material respects with all [a]pplicable [l]aws, including, without limitation, those [a]pplicable [l]aws dealing with zoning, parking, access, loading facilities, landscaped areas, building construction, [and] fire and public health and safety." In addition to the transfer of property, the sale transferred all the plant's employees and some of the plant's management to D.O. Productions. Defendant retained some of its officers, including its director of engineering, Curt Steinbach, and it continued operating its business.

Decedent had worked as an electrical mechanical technician at the plant for several years before the sale, and he was transferred to D.O. Productions upon the sale. During January 2015, decedent and Nicholas Empirio, the plant's lead mechanic, discussed salvaging parts from a decommissioned 993-pound Langen electric control panel (the panel), which had previously been used to operate a piece of packaging production equipment. Decedent and Empirio opened the panel's doors, and decedent showed Empirio the computer cards he wanted to recover. About a week later, on January 21, 2015, decedent was killed when the panel fell on him as he was attempting to salvage the parts. No one witnessed the accident.

A-1525-18T1

On March 31, 2016, plaintiff filed a complaint against defendant under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and the Survival Act, N.J.S.A. 2A:15-3, seeking damages for negligence and loss of consortium.[3] Defendant answered the complaint and denied all liability. The parties then proceeded to discovery. They deposed several individuals, and each party obtained an expert.

Marco Schmidt, D.O. Productions' corporate designee for the asset purchase agreement, testified that before the sale, defendant only allowed D.O. Productions to perform a walkthrough inspection of the plant, and the inspection was "fairly swift," lasting about ninety minutes. D.O. Productions relied heavily on defendant's warranties and would not have agreed to the sale without them. Further, Schmidt testified that he was not aware of "any discussions between [defendant] and D.O. Productions about Langen electrical control panels."

John Myers, the plant's maintenance manager, testified that there was an idle asset area in the plant where decommissioned equipment was stored. Among other things, the idle asset area stored the panel. Myers testified that defendant had decommissioned the panel in 2006 and stored it in the idle asset area in an upright position, neither bolted to the ground nor tethered to a column.

---

[3] The complaint also asserted claims against D.O. Properties, Inc., but those claims were dismissed on March 16, 2018.

After the panel was decommissioned, it was not moved, and it remained in the same location through the date of the accident. At the time of the sale, the panel was surrounded by other decommissioned equipment, and it was inaccessible without moving other equipment. Only after the sale did D.O. Productions start to move equipment out of the idle asset area. Access to the panel was cleared about two weeks before the accident.

Steinbach, defendant's director of engineering, testified that when Langen control panels are taken out of service, they are "[e]ither place[d] . . . horizontally onto [a] pallet or skid or secure[d] . . . to something if they're left in a vertical position." When asked how a panel should be secured in a vertical position, Steinbach testified that he was unsure whether he was the "one to answer that specifically." However, plaintiff's facility expert, Edward A. Gray, opined that "[h]ad . . . [defendant] secured the incident control cabinet with anchor bolts in its leg support brackets, tethered it vertically, or laid it down horizontally on a pallet this hazard could and should have been eliminated." Defendant's safety consultant, Leo J. DeBobes, also testified that he would not have stored the panel in the way that defendant did, explaining that he "probably would have strapped it or tethered it to something." Both Gray and DeBobes also referred to the U.S. Department of Labor Occupational Safety and Health

Administration's post-accident inspection, which "revealed that a violation of the OSHA standards was a direct causal factor of this accident, 1910.176(b)."[4]

Gray also opined that "[defendant] knew, or should have known, that the incident unsecured electrical control cabinet was dangerous to anyone who could come in proximity of it, including [decedent]." Moreover, he opined that

> [s]imply packing and piling other equipment around the incident electrical control panel did not leave it in safe condition. . . . The action of moving around equipment in the idle asset storage area, a likely event at some future point, would have exposed any person to the incident electric panel tipping over.

Gray concluded that "several factors in combination caused the unanchored cabinet to topple over," including decedent's interaction with the cabinet, "[u]nreliable contact with the floor," and "[c]ompromised cabinet feet" resulting from rust.

Empirio testified that on the day that he and decedent discussed plans to salvage the panel's parts, he looked inside the panel with decedent, and the panel was in a "stand-up position" and was neither tethered to a column nor anchored to the floor. However, the panel did not rock or wobble when they opened the

---

[4] "Secure Storage. Storage of material shall not create a hazard. Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse." OSHA Handling materials–general, 29 C.F.R. § 1910.176(b) (2020).

doors.  The panel did not appear unstable, and Empirio did not observe that the foot stands had deteriorated.  Empirio also explained that he was not trained in the proper storage of these types of panels.

After the close of discovery, on July 20, 2018, defendant moved for summary judgment.  On August 17, 2018, after hearing oral argument, the judge granted defendant's motion in an oral opinion and issued an order dismissing plaintiff's complaint.

The judge determined that defendant "is not responsible for the accident as a matter of law because it did not own the plant or [the] involved electrical panel on the day of the accident."  The judge reasoned that a vendor of real property generally is not liable for harm caused by a dangerous condition on the property that existed at the time the vendee took possession of the property.  However, Restatement (Second) of Torts § 353 provides an exception where

> (a) the vendee does not know or have reason to know of the condition or the risk involved, and (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

The judge found that there was no dispute that D.O. Productions' employees knew that the panel was unsecured a week before the accident, when decedent and Empirio first discussed salvaging the panel's parts.  Further, because

A-1525-18T1

defendant transferred all its plant employees through the sale, "[t]he complete knowledge of [defendant] regarding the plant, the equipment, and the storage of the involved electrical panel was transferred to D.O. Productions."

Under these facts, the judge determined that section 353 did not apply "because [defendant] had no reason to believe that D.O. Productions would not know of the alleged dangerous condition given that the latter inherited all of the former's employees." The judge further reasoned that "even if [section 353] applied, any potential liability of [defendant] was terminated when D.O. Productions discovered that the panel was freestanding and not secured by tethering or bolting after clearing the surrounding equipment in the idle asset area." Thus, the judge concluded that "[t]his case falls within the parameters of the general [r]ule of [v]endor's [n]on-[l]iability and presents no reason for this [c]ourt to depart from that [r]ule."

Plaintiff timely moved for reconsideration, and on October 31, 2018, the judge issued an order denying the motion. The judge found that plaintiff had failed to show that the judge had "expressed [her] decision based upon a palpably incorrect or irrational basis, did not consider or failed to appreciate the significance of probative, competent evidence in an obvious matter, or acted in an arbitrary, capricious, or unreasonable manner." This appeal ensued.

On appeal, plaintiff contends that the judge abused her discretion in denying the motion for reconsideration. First, plaintiff contends that the judge failed to consider that defendant could be liable under Restatement (Second) of Torts § 352 cmt. a, based on the warranty in the asset purchase agreement that the property and its uses complied with all applicable laws concerning public health and safety. Second, plaintiff contends that the judge did not view the evidence in a light most favorable to plaintiff and further did not recognize factual disputes concerning defendant's liability under Restatement (Second) of Torts § 353.

We review the denial of a motion for reconsideration for an abuse of discretion. Cummings v. Bahr, 295 N.J Super. 374, 389 (App. Div. 1996). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Reconsideration is appropriate where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of

probative, competent evidence." Cummings, 295 N.J Super. at 384 (quoting

D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

We first address plaintiff's contention that the judge should have considered Restatement (Second) of Torts § 352 cmt. a. Section 352 provides,

> Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.
>
> [Restatement (Second) of Torts § 352.]

Comment "a" to section 352 discusses the historical underpinnings of this rule:

> Under the ancient doctrine of caveat emptor, the original rule was that, in the absence of express agreement, the vendor of land was not liable to his vendee, or a fortiori to any other person, for the condition of the land existing at the time of transfer. As to sales of land this rule has retained much of its original force, and the implied warranties which have grown up around the sale of chattels never have developed. This is perhaps because great importance always has been attached to the deed of conveyance, which is taken to represent the full agreement of the parties, and to exclude all other terms and liabilities. The vendee is required to make his own inspection of the premises, and the vendor is not responsible to him for their defective condition, existing at the time of transfer. Still less is he liable to any third person who may come upon the land, even though such entry is in the right of the vendee.

11

[Restatement (Second) of Torts § 352 cmt. a.]

Plaintiff relies on comment "a" to argue that the general rule of vendor non-liability applies only "in the absence of express agreement" and that defendant is liable because it represented that the property and its uses complied with all applicable laws concerning public health and safety. See T & E Indus., Inc. v. Safety Light Corp., 123 N.J. 371, 387 (1991) ("[T]he principle of caveat emptor dictates that in the absence of express agreement, a seller is not liable to the buyer or others for the condition of the land existing at the time of transfer." (citing Restatement (Second) of Torts § 352 cmt. a)).

Plaintiff did not raise a claim for breach of the warranties contained in the asset purchase agreement nor could she have sustained such a claim as neither she nor decedent is a third-party beneficiary to the asset purchase agreement. See N.J.S.A. 2A:15-2 ("A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court and may use such contract as a matter of defense in an action against him although the consideration of the contract did not move from him."); Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982) ("The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing.").

A-1525-18T1

Moreover, the cases plaintiff cites in her appellate brief do not support the application of comment "a."[5]

We conclude that plaintiff failed to show that the judge's decision not to impose liability under comment "a" to section 352 was palpably incorrect or

---

[5] Neither T & E Indus., 123 N.J. 371 nor McDonald v. Mianecki, 79 N.J. 275 (1979) is relevant because neither involves a claim raised by an incidental beneficiary. In T & E Indus., 123 N.J. at 380-81, the buyer of a radium-contaminated property sued several former owners of the property for conducting an abnormally dangerous activity that led to the contamination. The Court held that caveat emptor does not preclude an owner from holding a predecessor in title liable for conducting an abnormally dangerous activity that resulted in a dangerous condition, such as radium contamination. Id. at 387-91. In McDonald, 79 N.J. at 294-98, the Court held that a builder-vendor of real estate may be held liable to a home buyer under the implied warranty of habitability for failing to provide potable water.

Likewise, neither O'Connor v. Altus, 67 N.J. 106 (1975) nor Cavanaugh v. Pappas, 91 N.J. Super. 597, 599-600 (Law Div. 1966) is relevant, as in each case, the courts considered other exceptions to the general rule of vendor non-liability. In O'Connor, 67 N.J. at 111, the plaintiffs sued the former owner of a building and a possible builder for personal injuries suffered by an infant who ran through a glass sidelight that appeared to be a glass door. However, the Court did not consider comment "a" to section 352 in the opinion. In Cavanaugh, 91 N.J. Super. at 599-600, a property owner sought indemnification from a former property owner for personal injuries suffered by the plaintiff that allegedly resulted from the negligent maintenance of a public sidewalk in front of the property. In denying the former owner's motion for judgment on the pleadings, the judge applied Restatement (Second) of Torts § 373, which permits liability to be imposed on a vendor of land who was negligent in allowing a nuisance to remain on the property, where such nuisance has injured a third person outside of the property. Id. at 604-05.

13

irrational.  Accordingly, in this regard, it was not an abuse of discretion to deny plaintiff's motion for reconsideration.

Next, we address plaintiff's contention that the judge did not apply the correct standard in reviewing a summary judgment motion and that the judge did not acknowledge factual disputes concerning defendant's liability under section 353.

In considering a motion for summary judgment, "the court's task is to determine whether a rational factfinder could resolve the alleged disputed issue in favor of the non-moving party – '[a]ll inferences of doubt are drawn against the moving party and in favor of the opponent of the motion.'"  Perez v. Professionally Green, LLC, 215 N.J. 388, 405-06, (2013) (alteration in original) (quoting Fielder v. Stonack, 141 N.J. 101, 127 (1995)).  However, "[n]ot every issue of fact is material.  In order to determine materiality, it is necessary first to set forth the contours of the legal issue presented."  Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012).  "The motion court must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case were tried."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016); see R. 4:46-2(c).

Our Supreme Court has endorsed section 353 to determine the liability of a vendor of property to a vendee.  See O'Connor, 67 N.J. at 114.  Section 353, entitled "Undisclosed Dangerous Conditions Known to Vendor," provides an exception to the general rule of vendor non-liability:

> (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> > (a) the vendee does not know or have reason to know of the condition or the risk involved, and
> >
> > (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.
>
> (2) If the vendor actively conceals the condition, the liability stated in [s]ubsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it.  Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.
>
> [Restatement (Second) of Torts § 353.]

The vendor's liability will lie only where "the vendee does not know or have reason to know of the condition or the risk involved."  Id. § (1)(a) (emphasis

15

added). "[T]he word 'or' carries with it natural disjunctive import." Pine Belt Chevrolet v. Jersey Cent. Power & Light Co., 132 N.J. 564, 578 (1993) (quoting State v. Duva, 192 N.J. Super. 418, 421 (Law Div. 1983)). Reading the clauses in section 353(1)(a) as such, a vendor is liable either when the vendee lacks knowledge of a dangerous condition or when the vendee lacks knowledge of the risk posed by the condition.

Additionally, because section 353(2) addresses the vendee's discovery of the dangerous condition after the transfer, section 353(1) must address the parties' knowledge at the time of the sale. Otherwise, section 353(2) would be superfluous. See State v. Rangel, 213 N.J. 500, 509 (2013) ("We do not read one part of a statute in a way that would render another part redundant or even absurd."). As explained in Restatement (Second) of Torts § 353 cmt. d, the vendee's actual or constructive knowledge of the dangerous condition at the time of the sale is premised upon the ability to inspect the property:

> A vendor, innocent of conscious deception, is entitled to expect, and therefore has reason to believe, that his vendee will discover a condition which would be disclosed by such an inspection as the vendee should make before buying the land and taking possession of it or before throwing it open to the entry of others. A vendor, therefore, is not required to exercise care to disclose dangerous conditions or to have an ordinarily retentive memory as to their existence, unless the condition is one which such an inspection by the vendee

would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe that his vendee will not realize it.

Accordingly, to survive a motion for summary judgment, plaintiff was required to present competent evidence from which a rational jury could find the following elements for liability under section 353: (1) Defendant concealed or failed to disclose to D.O. Productions that the panel was unsecured; (2) the unsecured panel posed an unreasonable risk of physical harm to persons at the plant; (3) at the time of the sale, D.O. Productions did not know or have reason to know that the panel was unsecured or that it posed a risk of causing physical harm; (4) at the time of the sale, defendant knew or had reason to know that the panel was unsecured; (5) at the time of the sale, defendant realized or should have realized that the unsecured panel posed a risk of causing physical harm; (6) at the time of the sale, defendant had reason to believe that D.O. Productions would not discover the unsecured panel or realize the risk of physical harm; and (7) D.O. Productions did not have a reasonable opportunity to discover the unsecured panel and to take effective precautions against it falling over.

Having reviewed the record, we conclude that plaintiff presented sufficient evidence from which a rational jury could find that plaintiff proved each element to impose liability on defendant under section 353. The parties do

not appear to dispute element one, that defendant failed to disclose that the panel was unsecured, so we address it no further.

With respect to element two, whether the unsecured panel posed an unreasonable risk of physical harm at the time of the sale, Myers, the plant's maintenance manager, testified that the panel was not moved from the idle asset area, and only after D.O. Productions took possession of the plant did employees start to move equipment from that area. However, Gray, plaintiff's expert, opined that defendant should have known that the failure to secure the panel posed a risk of harm to any person that was near it, so defendant should have secured the panel. Further, Gray opined that if any person moved the surrounding equipment, he or she would be at risk of harm. In addition, Steinbach, defendant's director of engineering, testified that the panel should have been secured, and DeBobes, defendant's safety consultant, admitted that he would have secured the panel.

With respect to element three, whether at the time of sale D.O. Productions knew or had reason to know that the panel was unsecured or posed a risk of physical harm, the judge found that that D.O. Productions' employees knew that the panel was unsecured a week before the accident, when decedent and Empirio first discussed salvaging the panel's parts. That decedent and

18

Empirio began working with the panel a week before the accident is irrelevant under section 353(1)(a), which pertains to the vendee's knowledge at the time of the sale. Moreover, plaintiff presented evidence that creates a genuine dispute of fact as to this element. At the time of the sale, because D.O. Productions had only been able to conduct a cursory walkthrough of the premises, it could not have known or had reason to know that the panel was freestanding and in a vertical position, unsecured by strapping or bolting. Further, D.O. Productions' employees did not know that the panel's foot stands had deteriorated, a condition that Gray opined was one of "several factors [that] in combination caused the unanchored cabinet to topple over."

With respect to elements four, five, and six, concerning defendant's knowledge of the panel's condition and risk and defendant's knowledge as to whether D.O. Productions would discover the panel's condition or risk, the judge concluded that defendant was not liable because "[t]he complete knowledge of [defendant] regarding the plant, the equipment, and the storage of the involved electrical panel was transferred to D.O. Productions" after the sale because defendant's employees also transferred to D.O. Productions. While this reasoning is generally consistent with agency law, we find that the judge did not appreciate that some of defendant's officers remained employed by defendant.

19

In general, the knowledge of an agent is imputed to his or her principal: "The imputation doctrine is derived from common law rules of agency relating to the legal relationship among principals, agents, and third parties. Pursuant to those common law rules, a principal is deemed to know facts that are known to its agent." NCP Litig. Tr. v. KPMG LLP, 187 N.J. 353, 366 (2006); see also Restatement (Third) of Agency § 5.03 (Am. Law Inst. 2006) ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal[.]").

Steinbach, defendant's director of engineering, did not transfer with the sale, and he testified that when a panel like the one involved in the accident is decommissioned and place vertically, it should be secured. Further, employees that transferred with the sale, like Empirio, were not necessarily trained on how to safely store the panel. Concerning elements four and five specifically, plaintiff emphasized that defendant had previously owned the property and was responsible for the maintenance of its own equipment years before the sale, and further, in guaranteeing that the property complied with all applicable laws in the asset purchase agreement, defendant should have investigated the property and equipment to ensure that it had complied with all applicable laws. With respect to element six specifically, a jury could find that defendant had reason

20

to believe that D.O. Productions would not discover that the panel was unsecured and was at risk of falling over because defendant only allowed D.O. Productions to conduct a cursory inspection before the sale, and the panel was concealed by other equipment in the idle asset area.

Finally, with respect to element seven, whether D.O. Productions had a reasonable opportunity to discover the panel's condition and take precautions, we find that there is no evidence in the record that establishes that D.O. Productions discovered or should have discovered the panel's dangerous condition before the day that decedent and Empirio noticed the unsecured panel. Further, there is no evidence establishing that once they did notice the panel, they knew or should have known that it was in a dangerous condition, and there was sufficient time to remedy its condition. While DeBobes opined that D.O. Productions failed to ensure that the equipment in the idle asset area was safe and in compliance with relevant codes, Gray refuted these conclusions and opined that DeBobes' "discrepancy between holding D.O. Productions liable . . . for not implementing safe storage practices with proper hazard warning (of the incident electrical cabinet) while simultaneously releasing [defendant] from the same stand of care is disingenuous."

As this appeal arises from the denial of a motion for reconsideration, we acknowledge that our review is more deferential than it would be if we were only reviewing a motion for summary judgment. However, because we find that plaintiff presented sufficient evidence from which a rational jury could find that defendant is liable under Restatement (Second) of Torts § 353, we conclude that in denying plaintiff's motion for reconsideration, the judge did not "appreciate the significance of probative, competent evidence." Cummings, 295 N.J Super. at 384. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

To the extent we have not specifically addressed any remaining arguments raised by the parties, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION